[Civ. No. 21937. Third Dist. July 21, 1983.]

DORRIS JONI REED, Plaintiff and Appellant, v.
ROBERT J. KING et al., Defendants and Respondents.

COUNSEL

McKernan & Lanam and Stephen E. Benson for Plaintiff and Appellant.

Price, Burness, Price, Davis & Brown, Philip B. Price and Mary Mash Linde for Defendants and Respondents.

OPINION

BLEASE, J.—In the sale of a house, must the seller disclose it was the site of a multiple murder?

Dorris Reed purchased a house from Robert King. Neither King nor his real estate agents (the other named defendants) told Reed that a woman and her four children were murdered there 10 years earlier. However, it seems "truth will come to light; murder cannot be hid long." (Shakespeare, Merchant of Venice, act II, scene II.) Reed learned of the gruesome episode from a neighbor after the sale. She sues seeking rescission and damages. King and the real estate agent defendants successfully demurred to her first

amended complaint for failure to state a cause of action. Reed appeals the ensuing judgment of dismissal. We will reverse the judgment.

## Facts

■ We take all issuable facts pled in Reed's complaint as true. (See 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 800.) King and his real estate agent knew about the murders and knew the event materially affected the market value of the house when they listed it for sale. They represented to Reed the premises were in good condition and fit for an "elderly lady" living alone. They did not disclose the fact of the murders. At some point King asked a neighbor not to inform Reed of that event. Nonetheless, after Reed moved in neighbors informed her no one was interested in purchasing the house because of the stigma. Reed paid $76,000, but the house is only worth $65,000 because of its past.

The trial court sustained the demurrers to the complaint on the ground it did not state a cause of action. The court concluded a cause of action could only be stated "if the subject property, by reason of the prior circumstances, were *presently* the object of community notoriety . . . ." (Original italics.) Reed declined the offer of leave to amend.

## Discussion

■ Does Reed's pleading state a cause of action? Concealed within this question is the nettlesome problem of the duty of disclosure of blemishes on real property which are not physical defects or legal impairments to use.

Reed seeks to state a cause of action sounding in contract, i.e. rescission, or in tort, i.e., deceit. In either event her allegations must reveal a fraud. (See Civ. Code, §§ 1571-1573, 1689, 1709-1710.) ■ "The elements of actual fraud, whether as the basis of the remedy in contract or tort, may be stated as follows: There must be (1) a *false representation* or concealment of a material fact (or, in some cases, an opinion) susceptible of knowledge, (2) made with *knowledge* of its falsity or without sufficient knowledge on the subject to warrant a representation, (3) with the *intent* to induce the person to whom it is made to act upon it; and such person must (4) act in *reliance* upon the representation (5) to his *damage.*"[1] (Original italics.) (1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 315.)

The trial court perceived the defect in Reed's complaint to be a failure to allege concealment of a material fact. "Concealment" and "material" are

---

[1]Proof of damage, i.e. specific pecuniary loss, is not essential to obtain rescission alone. (See 1 Witkin, *op. cit. supra,* §§ 324-325; see also *Earl* v. *Saks & Co.* (1951) 36 Cal.2d 602 [226 P.2d 340].)

legal conclusions concerning the effect of the issuable facts pled. As appears, the analytic pathways to these conclusions are intertwined.

■ Concealment is a term of art which includes mere nondisclosure when a party has a duty to disclose. (See, e.g., *Lingsch v. Savage* (1963) 213 Cal.App.2d 729, 738 [29 Cal.Rptr. 201, 8 A.L.R.3d 537]; Rest.2d Contracts, § 161; Rest.2d Torts, § 551; Rest., Restitution, § 8, esp. com. b.) Reed's complaint reveals only nondisclosure despite the allegation King asked a neighbor to hold his peace. There is no allegation the attempt at suppression was a cause in fact of Reed's ignorance.[2] (See Rest.2d Contracts, §§ 160, 162-164; Rest.2d Torts, § 550; Rest., Restitution, § 9.) ■ Accordingly, the critical question is: does the seller have a duty to disclose here? Resolution of this question depends on the materiality of the fact of the murders.

■ In general, a seller of real property has a duty to disclose: "where the seller knows of facts *materially* affecting the value or desirability of the property which are known or accessible only to him and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer.[3] [Italics added, citations omitted.]" (*Lingsch v. Savage, supra,* 213 Cal.App.2d at p. 735.) This broad statement of duty has led one commentator to conclude: "The ancient maxim *caveat emptor* ('let the buyer beware.') has little or no application to California real estate transactions." (1 Miller & Starr, Current Law of Cal. Real Estate (rev.ed. 1975) § 1:80.)

■ Whether information "is of sufficient materiality to affect the value or desirability of the property . . . depends on the facts of the particular case." (Lingsch, *supra,* 213 Cal.App.2d at p. 737.) Materiality "is a question of law, and is part of the concept of right to rely or justifiable reliance." (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 578, p. 2217.) Accord-

[2]Reed elsewhere in the complaint asserts defendants "actively concealed" the fact of the murders and this in part misled her. However, no connection is made or apparent between the legal conclusion of active concealment and any issuable fact pled by Reed. Accordingly, the assertion is insufficient. (See *Bacon v. Soule* (1912) 19 Cal.App. 428, 438 [126 P. 384].) Similarly we do not view the statement the house was fit for Reed to inhabit as transmuting her case from one of nondisclosure to one of false representation. To view the representation as patently false is to find "elderly ladies" uniformly susceptible to squeamishness. We decline to indulge this stereotypical assumption. To view the representation as misleading because it conflicts with a duty to disclose is to beg that question.

[3]The real estate agent or broker representing the seller is under the same duty of disclosure. (*Lingsch v. Savage, supra,* 213 Cal.App.2d at p. 736.)

ingly, the term is essentially a label affixed to a normative conclusion.[4] Three considerations bear on this legal conclusion: the gravity of the harm inflicted by nondisclosure; the fairness of imposing a duty of discovery on the buyer as an alternative to compelling disclosure, and the impact on the stability of contracts if rescission is permitted.

Numerous cases have found nondisclosure of physical defects and legal impediments to use of real property are material. (See 1 Miller & Starr, *supra,* § 181.)[5] However, to our knowledge, no prior real estate sale case has faced an issue of nondisclosure of the kind presented here. (Compare *Earl* v. *Saks & Co., supra,* 36 Cal.2d 602; *Kuhn* v. *Gottfried* (1951) 103 Cal.App.2d 80, 85-86 [229 P.2d 137].) Should this variety of ill-repute be required to be disclosed? Is this a circumstance where "non-disclosure of the fact amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing[?]" (Rest.2d Contracts, § 161, subd. (b).)

The paramount argument against an affirmative conclusion is it permits the camel's nose of unrestrained irrationality admission to the tent. If such an "irrational" consideration is permitted as a basis of rescission the stability of all conveyances will be seriously undermined. Any fact that might disquiet the enjoyment of some segment of the buying public may be seized upon by a disgruntled purchaser to void a bargain.[6] In our view, keeping

---

[4]This often subsumes a policy analysis of the effect of permitting rescission on the stability of contracts. (See fn. 6, *ante.*) "In the case law of fraud, the word 'material' has become a sort of talisman. It is suggested that it has no meaning when undefined other than to the user since the word actually means no more than that the fraud is the sort which will justify rescission or damages in deceit. However, courts continue to use materiality as a test without explanatory reference to the varying standards of reliance, damage, etc. they are following." (Note, *Rescission: Fraud as Ground: Contracts* (1951) 39 Cal.L.Rev. 309, 310-311, fn. 4.)

[5]For example, the following have been held of sufficient materiality to require disclosure: the home sold was constructed on filled land (*Burkett* v. *J.A. Thompson & Son* (1957) 150 Cal.App.2d 523, 526 [310 P.2d 56]); improvements were added without a building permit and in violation of zoning regulations (*Barder* v. *McClung* (1949) 93 Cal.App.2d 692, 697 [209 P.2d 808]) or in violation of building codes (*Curran* v. *Heslop* (1953) 115 Cal.App.2d 476, 480-481 [252 P.2d 378]); the structure was condemned (*Katz* v. *Department of Real Estate* (1979) 96 Cal.App.3d 895, 900 [158 Cal.Rptr. 766]); the structure was termite-infested (*Godfrey* v. *Steinpress* (1982) 128 Cal.App.3d 154 [180 Cal.Rptr. 95]); there was water infiltration in the soil (*Barnhouse* v. *City of Pinole* (1982) 133 Cal.App.3d 171, 187-188 [183 Cal.Rptr. 881]); the amount of net income a piece of property would yield was overstated (*Ford* v. *Cournale* (1973) 36 Cal.App.3d 172, 179-180 [111 Cal.Rptr. 334, 81 A.L.R.3d 704].)

[6]Concern for the effects of an overly indulgent rescission policy on the stability of bargains is not new. Our Supreme Court early on quoted with approval the sentiment: " 'The power to cancel a contract is a most extraordinary power. It is one which should be exercised with great caution,—nay, I may say, with great reluctance,—unless in a clear case. A too free use of this power would render all business uncertain, and, as has been said, make the length of a chancellor's foot the measure of individual rights. The greatest liberty of making contracts is essential to the business interests of the country. In general, the parties must look out for themselves.' " (*Colton* v. *Stanford* (1980) 82 Cal. 351, 398 [23 P. 16].)

this genie in the bottle is not as difficult a task as these arguments assume. We do not view a decision allowing Reed to survive a demurrer in these unusual circumstances as indorsing the materiality of facts predicating peripheral, insubstantial, or fancied harms.

██ The murder of innocents is highly unusual in its potential for so disturbing buyers they may be unable to reside in a home where it has occurred. This fact may foreseeably deprive a buyer of the intended use of the purchase. Murder is not such a common occurrence that *buyers* should be charged with anticipating and discovering this disquieting possibility. Accordingly, the fact is not one for which a duty of inquiry and discovery can sensibly be imposed upon the buyer.

Reed alleges the fact of the murders has a quantifiable effect on the market value of the premises.[7] We cannot say this allegation is inherently wrong and, in the pleading posture of the case, we assume it to be true. If information known or accessible only to the seller has a significant and measurable effect on market value and, as is alleged here, the seller is aware of this effect, we see no principled basis for making the duty to disclose turn upon the character of the information. Physical usefulness is not and never has been the sole criterion of valuation. Stamp collections and gold speculation would be insane activities if utilitarian considerations were the sole measure of value. (See also Civ. Code, § 3355 [deprivation of property of peculiar value to owner]; Annot. (1950) 12 A.L.R.2d 902 [Measure of Damages for Conversion or Loss of, or Damage to, Personal Property Having No Market Value].)

Reputation and history can have a significant effect on the value of realty. "George Washington slept here" is worth something, however physically inconsequential that consideration may be. Ill-repute or "bad will" conversely may depress the value of property. Failure to disclose such a negative fact where it will have a foreseeably depressing effect on income expected to be generated by a business is tortious. (See Rest.2d Torts, § 551, illus. 11.) Some cases have held that *unreasonable* fears of the potential buying public that a gas or oil pipeline may rupture may depress the market value of land and entitle the owner to incremental compensation in eminent domain. (See Annot., Eminent Domain: Elements and Measure of Compensation for Oil or Gas Pipeline Through Private Property (1954) 38 A.L.R.2d 788, 801-804.)

---

[7]See Evidence Code section 810 et seq. We note the traditional formulation of market value assumes a buyer "with knowledge of all the issues and purposes to which [the realty] is adapted." (See e.g. *South Bay Irr. Dist.* v. *California-American Water Co.* (1976) 61 Cal.App.3d 944, 961 and 970 [133 Cal.Rptr. 166].)

██ ██ ██ ██ Whether Reed will be able to prove her allegation the decade-old multiple murder has a significant effect on market value we cannot determine.[8] If she is able to do so by competent evidence she is entitled to a favorable ruling on the issues of materiality and duty to disclose.[9] Her demonstration of objective tangible harm would still the concern that permitting her to go forward will open the floodgates to rescission on subjective and idiosyncratic grounds.

A more troublesome question would arise if a buyer in similar circumstances were unable to plead or establish a significant and quantifiable effect on market value. However, this question is not presented in the posture of this case. Reed has not alleged the fact of the murders has rendered the premises useless to her as a residence. As currently pled, the gravamen of her case is pecuniary harm. We decline to speculate on the abstract alternative.

The judgment is reversed.

Evans, Acting P. J., and Carr, J., concurred.

The petition of respondent King for a hearing by the Supreme Court was denied October 6, 1983. Richardson, J., was of the opinion that the petition should be granted.

---

[8]"[I]n determining what factors would motivate [buyers and sellers] in reaching an agreement as to price, and in weighing the effect of their motivation, [the trier of fact] may rely upon the opinion of experts in the field and also upon its knowledge and experience shared in common with people in general." (*South Bay Irr. Dist., supra,* 61 Cal.App.3d at p. 970; see also 3 Wigmore, Evidence (Chadbourn rev.ed. 1970) § 711 et seq.)

[9]The ruling of the trial court requiring the additional element of notoriety, i.e. widespread public knowledge, is unpersuasive. Lack of notoriety may facilitate resale to yet another unsuspecting buyer at the "market price" of a house with no ill-repute. However, it appears the buyer will learn of the possibly unsettling history of the house soon after moving in. Those who suffer no discomfort from the specter of residing in such quarters per se, will nonetheless be discomforted by the prospect they have bought a house that may be difficult to sell to less hardy souls. Nondisclosure must be evaluated as fair or unfair regardless of the ease with which a buyer may escape this discomfort by foisting it upon another.