[No. D014801. Fourth Dist., Div. One. June 25, 1992.]

ELAINE M. ALEXANDER et al., Plaintiffs and Respondents, v.
WILLIAM H. McKNIGHT et al., Defendants and Appellants.

## COUNSEL

Robert E. La Croix for Defendants and Appellants.

Sullivan, Cummins, Wertz, McDade & Wallace and Bruce R. Wallace for Plaintiffs and Respondents.

## OPINION

**WIENER, Acting P. J.**—The source of the underlying litigation in this case is a neighborhood dispute between plaintiffs Elaine M. and D. Steven Alexander and four other couples who live either adjacent to or across the street from the defendants Mary and William H. McKnight. In a nonjury trial the court determined the conduct of the McKnights warranted granting the plaintiffs equitable relief and damages of $28,000. The McKnights appeal only that part of the monetary award, $24,000, reflecting the court's finding that the McKnights' behavior caused the value of plaintiffs' houses to be reduced by that amount. We conclude the court erred in awarding such damages. We explain this item of damages, in addition to the equitable relief granted to the plaintiffs, ordering the McKnights to either correct or cease their objectionable and/or unlawful activities, constitutes a double recovery. We therefore reduce the damages of $28,000 to $4,000. Because of the unique circumstances of this case we decide to remand for further proceedings so that plaintiffs may recover damages, to the extent they are so entitled, from the defendants' conduct which may have caused the plaintiffs emotional distress.

I

The parties live in a subdivided residential area of San Diego. Because of the topography of the subdivision and the finished elevations of the houses,

the developer filed a declaration of restrictions (CC&R's) to protect the privacy of the residents and to preserve their views of the canyons and hills. Motivated by the McKnights' failure to comply with the CC&R's and their continuing disagreeable behavior, plaintiffs filed this action seeking equitable relief and damages alleging the McKnights violated the CC&R's by constructing a two-story cabana in their backyard, recorded an invalid amendment to the CC&R's, constructed a deck without a building permit and engaged in various other activities constituting nuisances, all of which were contrary to the CC&R's.

The court agreed with the plaintiffs, finding the McKnights' behavior constituted a "pattern of offensive and noxious activities." The McKnights violated the CC&R'S by operating a tree trimming business from their house involving the "use of a noisy tree chipper," engaged in other activities resulting in excessive noise, e.g. late-night basketball games, parked too many cars on their property and poured motor oil on the roof of their house. The court ordered the McKnights to reduce the height of the cabana, remove the deck unless a building permit was obtained, enjoined them from pouring any more motor oil on the roof of their house and cancelled an invalid amendment to the CC&R's which the McKnights had recorded. The court also determined that because Civil Code section 1102.6.[1] required the plaintiffs to disclose to potential buyers that the McKnights were "difficult neighbors" the value of their respective properties would be reduced by a total of $24,000 and therefore included that sum in its $28,000 award of damages.

## II

Section 1102.6's disclosure form requires a seller answer either "yes" or "no" to a number of questions including the following: "Are you (Seller) aware of any of the following? [¶] 11. Neighborhood noise problems or other nuisances." When the seller answers "yes" the seller must then explain the circumstances. (See § 1102.6, provision II-C-11.) ▮ The McKnights contend that in the circumstances of this case the court erred in concluding the plaintiffs will be required to affirmatively respond to this question. They say their future compliance with the judgment virtually guarantees that any "neighborhood noise problems and nuisances" in which they have been

---

[1]All statutory references are to the Civil Code unless otherwise specified.

Section 1102.6 mandates that a seller furnish specified information to the buyer to enable the buyer to make a fully informed decision on whether to purchase the property. In addition to disclosures pertaining to significant defects in the house and on physical aspects of the property including such items as interior walls, floors and ceilings, the seller must also disclose whether there are any "neighborhood noise problems or other nuisances." (§ 1102.6, provision II-C-11.)

involved will now be eliminated and accordingly the plaintiffs can truthfully answer "no" to this question. Although as we shall explain, their argument is persuasive on the question of damages, it is unpersuasive on the plaintiffs' duty of disclosure.

The purpose of section 1102.6 requires that it be liberally interpreted so that a buyer will be fully informed on matters affecting the value of the property to be purchased. This means that in a case like this a seller cannot take a revisionist view of history ignoring what has occurred in the past with its implicit representation to a potential buyer that the neighborhood is—and has been—an oasis of tranquility in our otherwise oppressive urban environment. We assume the Legislature's decision to exclude whether the neighborhood difficulties have been resolved by court order from the prescribed disclosure form reflects its intent that a judgment ordering a neighbor to be "neighborly" cannot be equated with the nonexistence of such problems.

■ Whether information has sufficient materiality to affect the value or desirability of residential property is a fact-specific determination. (*Lingsch* v. *Savage* (1963) 213 Cal.App.2d 729, 737 [29 Cal.Rptr. 201, 8 A.L.R.3d 537].) Reputation and history clearly have a significant effect on the value of a piece of property. " 'George Washington slept here' is worth something, however physically inconsequential that consideration may be. Ill-repute or 'bad will' conversely may depress the value of property." (*Reed* v. *King* (1983) 145 Cal.App.3d 261, 267 [193 Cal.Rptr. 130].)

Failure to disclose a negative fact when it can reasonably be said to have a foreseeably depressing affect on the value of property is tortious. (*Reed* v. *King*, *supra*, 145 Cal.App.3d at p. 267.) Thus " 'where the seller knows of facts *materially* affecting the value or desirability of the property which are known or accessible only to him and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer, . . .' " (*Reed* v. *King*, at p. 265, quoting *Lingsch* v. *Savage*, *supra*, 213 Cal.App.2d at p. 735.) The fact that a neighborhood contains an overtly hostile family who delights in tormenting their neighbors with unexpected noises or unending parties is not a matter which will ordinarily come to the attention of a buyer viewing the property at a time carefully selected by the seller to correspond with an anticipated lull in the "festivities." If anything, the concept of "let the buyer beware" is an anachronism in California having little or no application in real estate law. (See 1 Miller & Starr, Cal. Real Estate 2d (1989) § 1:121, pp. 407-408.) The trier of fact is capable of deciding on the basis of expert testimony or on his or her personal knowledge and experience the factors determining the price of real estate being sold in a specific

transaction. (*South Bay Irr. Dist.* v. *California-American Water Co.* (1976) 61 Cal.App.3d 944, 969-970 [133 Cal.Rptr. 166].)

■ Here, there was ample evidence to support the court's conclusion the McKnights' behavior would require the plaintiffs to disclose there were neighborhood problems. The court heard evidence about the McKnights conducting a tree trimming business from their residence, the excessive noise and the large number of cars parked in the front yard. On this evidence the court properly concluded the McKnights' conduct constituted a "pattern of offensive and noxious activities." Provided the McKnights were still living in the neighborhood at the time of any potential residential sale by the plaintiffs, the court correctly determined the plaintiffs would be required to affirmatively respond to the question whether there were "neighborhood noise problems or other nuisances." The plaintiffs' statutorily mandated duty of disclosure to a potential buyer, however, does not answer the separate question of whether they are entitled to the alleged diminution in value of their properties resulting from such disclosure.

### III

■ The $24,000 in damages awarded to the respective plaintiffs was to reimburse them for the economic loss they would sustain if they were to sell their respective residences following section 1102.6's disclosure. As a practical matter we agree with the court's assessment that such a disclosure would affect the market value of residential property. It is reasonable to assume that a prospective buyer would not be anxious to become involved in a neighborhood dispute, and that all things being equal, would prefer to live in a more collegial and hospitable neighborhood. In economic terms this reluctance would be reflected in a reduced purchase price. The buyer willing to assume headaches and other emotional discomfort in purchasing a residence will undoubtedly expect a discount for doing so. In this sense we endorse the court's determination that plaintiffs will suffer "diminution in value" of their properties.

Omitted in the foregoing calculus, however, is the presumption which necessarily must accompany a valid court order, i.e., a party will comply with its terms. Thus, problems corrected through equitable relief may not be compensated through an award of damages. To hold otherwise permits a plaintiff to be unjustly enriched, receiving financial compensation when there is no compensable loss. Consequently, here on the assumption the McKnights comply with the equitable terms of the judgment, the neighborhood problems will be resolved and the plaintiffs will suffer no damages.

It is not as if the plaintiffs are being denied an effective remedy or deprived of damages which they have actually suffered. At the time of trial

none of the plaintiffs' houses were on the market. If at some future time the McKnights fail to comply with the judgment or insist on finding other ways to offend their neighbors, the plaintiffs will be able to enforce the existing judgment through contempt proceedings or obtain appropriate relief, including damages by filing new actions alleging what the McKnights have done and why they are entitled to redress.

It is well established that "[i]f the plaintiff receives an injunction against the defendant which requires the defendant to abate the nuisance, the plaintiff can recover past and present damages, but not future damages, since the abatement order will terminate the nuisance for the future." (9 Miller & Starr, Cal. Real Estate 2d (1990) § 29:12, p. 85, italics omitted, citing *Spaulding* v. *Cameron* (1952) 38 Cal.2d 265 [239 P.2d 625].)

In *Spaulding* the trial court ordered the defendant to build protective structures to prevent future mudslides and also awarded damages for diminution in value due to the continuing threat of future mudslides. The California Supreme Court reversed the judgment stating: "Plaintiff would obtain a double recovery if she could recover for the depreciation in value and also have the cause of that depreciation removed." (38 Cal.2d at p. 269.) The court reasoned: "If defendant obeys the injunction and takes such measures that 'the property of the plaintiff will not be endangered or threatened by the existence of such deposits of loose dirt,' there will no longer be a threat to depreciate the value of the property." (*Ibid.*)

Similarly, in *Rhodes* v. *San Mateo Investment Co.* (1955) 130 Cal.App.2d 116 [278 P.2d 447], defendants made excavations on their property which resulted in slides creeping up the slope towards plaintiffs' land. The court granted a nonsuit on the issue of damages and issued a permanent injunction ordering defendant to stabilize the hillside so as to prevent slides from encroaching upon or damaging plaintiffs' property. (At p. 117.) The court expressly found that " 'it is possible, practicable and feasible for the earth or soil in [defendant's land] to be permanently stabilized so as to prevent any further sloughing or sliding thereof, and to prevent any possible . . . damage to plaintiffs' property . . . .' " (At p. 118.) The court ruled that under *Spaulding* v. *Cameron, supra,* 38 Cal.2d 265, damages for depreciation in market value could not be allowed. (*Ibid.*)

In *Baker* v. *Burbank-Glendale-Pasadena Airport Authority* (1985) 39 Cal.3d 862 [218 Cal.Rptr. 293, 705 P.2d 866], the California Supreme Court again pointed out that where the nuisance is abated "[r]ecovery is limited . . . to actual injury suffered prior to commencement of each action. Prospective damages are unavailable." (At p. 869.)

Admittedly the facts of the cited cases are different than the facts here since the problems to be corrected in those cases were accomplished in a mechanical way by constructing carefully engineered physical structures. Here the difficulties are primarily psychological, with no guaranteed physical solution to prevent the McKnights from reverting to their legally objectionable behavior. Notwithstanding our ability to distinguish the cases on a factual basis, we are unable to do so conceptually. The rule derived from the reported cases is that damages may not be awarded where the economic loss caused by defects associated with the property has been abated by court order. Here the court has ordered the defects—behavioral as well as physical—abated and accordingly we must assume that the ensuing economic loss has also been eliminated.

We are also unable to distinguish this case from those we have cited on the ground that the marketplace will deal differently with the values of property where the defects are solely physical. We believe it is economically realistic to conclude the market value of plaintiff's house in *Spaulding* was adversely affected by the earlier mudslides surrounding the house even though the court ordered the defendant to build protective structures to prevent the plaintiff's house from being inundated by mud in the future. Again, all things being equal we assume a prudent buyer would prefer to avoid the risk of a potential slide and the opportunity to test the adequacy of the structures constructed to withstand such an event. Notwithstanding our marketplace observation, however, because we are unable to distinguish this case from precedent, we hold the court erred in awarding $24,000 damages representing the diminution in value of plaintiffs' houses.

In fairness to the plaintiffs, however, we decline to strike the $24,000 damage award on this record where the judgment omits any discussion as to whether any of the plaintiffs are entitled to damages because of the McKnights having negligently and intentionally caused their emotional distress. Causes of action seeking such damages are included in plaintiffs' first amended complaint, but are not mentioned in the court's tentative decision. There is also nothing before us showing plaintiffs voluntarily withdrew these causes of action. Consequently, because the award of $24,000 in damages which we have now eliminated may have been a material consideration in plaintiffs' apparent decision not to seek a correction of the judgment, we think it only proper that we remand for the limited purpose of allowing the court to include such damages, if any, in its decision.

## DISPOSITION

The judgment is modified to reduce the damage award from $28,000 to $4,000. The case is remanded for future proceedings consistent with this opinion. The McKnights shall bear all costs for this appeal.

Work, J., and Nares, J., concurred.