[No. C026195. Third Dist. June 29, 1998.]

TED STEVENSON et al., Plaintiffs and Appellants, v.
JAMES W. BAUM, Defendant and Respondent.

## COUNSEL

Peter J. Stubbs and Jack Mitchell for Plaintiffs and Appellants.

Neumiller & Beardslee, Daniel J. Schroeder and Nancy A. Gradante for Defendant and Respondent.

## OPINION

**SIMS, Acting P. J.**—Plaintiffs Ted and Alice Stevenson bought a mobile-home park from defendant James W. Baum under a contract which provided that "[t]itle is to be free of . . . easements . . . other than . . . [t]hose of record" and that Baum was to furnish a title policy "insuring title in Buyer subject only to . . . easements . . . as set forth above."

The title policy furnished to the Stevensons revealed the existence of a recorded easement for ingress and egress belonging to Standard Oil Company. It failed to mention that the easement was also for pipeline purposes, although this fact was clearly stated in the public records.

Long after the Stevensons bought the park, Standard Oil Company's successor in interest notified them that they would have to remove several mobile homes which encroached on the easement and blocked access to the pipeline.

The Stevensons sued Baum for fraudulent misrepresentation and concealment.[1] Baum moved for summary judgment, arguing among other things that he had misrepresented nothing and that the purchase contract relieved him of

---

[1]They also sued the real estate agent and broker who represented Baum in the transaction, but voluntarily dismissed those defendants before Baum's summary judgment motion was heard.

The Stevensons transferred ownership of the park to a living trust in 1984. Baum, in his motion for summary judgment, argued that because Chevron did not notify the Stevensons of its plan to use the easement until long after that time the Stevensons could allege no damages. Without conceding this point, the Stevensons moved for leave to amend their complaint to

any duty to disclose the recorded easement. The trial court granted the motion and dismissed the complaint. We shall affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Facts.*

Baum acquired title to Riverview Mobile Home Park in Pittsburg, Contra Costa County, California, in 1968. The property was burdened with an easement held by Standard Oil Company for ingress, egress, and pipeline purposes, duly recorded in Contra Costa County in 1942. When Baum bought the property, he was generally aware that Standard Oil had an easement which underlay some of the mobilehomes in the park. Baum obtained a title policy in 1978 which identified and fully described the easement and included a map showing the pipeline's approximate location.[2]

At some time after Baum bought the park (possibly in 1971), Standard Oil notified Baum that he would have to remove five mobilehomes which encroached on the easement so that Standard Oil could enter to work on the pipeline. After it completed its work, Baum put the mobilehomes back on their original sites.

At some time before November 24, 1980, Baum advertised the park for sale. He did not inform either the real estate broker or the agent who handled the transaction on his behalf about the pipeline easement or his temporary removal of five mobilehomes to allow work on the pipeline. The agent represented to the Stevensons that the park had 44 "approved" mobilehome spaces. It does, in fact, have 44 spaces.

On November 24, 1980, the Stevensons made an offer to buy the park, which Baum accepted. The resulting purchase contract stated that the park consisted of 44 approved mobilehome spaces. It also specified, among other things, that Baum would provide the Stevensons with title "free of . . . easements . . . other than [t]hose of record" and that he would furnish the

---

name the trust as an additional party. After granting the summary judgment motion, the trial court denied the motion, finding that it would fail "for the same reasons that the court earlier granted summary judgment." For reasons that follow, we agree with the trial court that the trust cannot possibly state a cause of action unavailable to the Stevensons. Therefore we do not discuss the proposed amendment further.

[2]In the trial court, the Stevensons purported to dispute that the map actually showed the pipeline's location, asserting that it showed only a sewer easement. On appeal they repeat this assertion, citing only to a reproduction of a map from the policy which shows an unlabeled easement. However, our inspection of the record reveals that the policy attached more than one map, and one of those maps (not cited to by the Stevensons) clearly labels the pipeline. Baum properly pointed to the existence of this map in the trial court.

Stevensons with a title insurance policy "insuring title in Buyer subject only to . . . easements . . . as set forth above."[3] Baum and the Stevensons understood the expression "[t]hose of record" to mean those that were legally recorded.[4]

The Stevensons reviewed no documents on the park before making their offer. They did not order or review any title report on the park before the signing of escrow instructions in April 1981. They first reviewed a title report during the signing of escrow instructions. This report, naming the Stevensons as "the insured," disclosed the existence of an oil company easement for ingress and egress, but did not disclose the pipeline. The Stevensons interpreted the easement to mean only that the oil company could enter and travel across the property.

The Stevensons never met or spoke to Baum before they took title to the park.

In January 1993, Chevron Pipe Line Company, Standard Oil's successor in interest, informed the Stevensons that mobilehomes in the park encroached on the easement and would have to be removed to allow access to the pipeline.

*The complaint and summary judgment.*

In November 1995 the Stevensons filed suit against Baum for fraud.[5] As pertinent on appeal, they alleged: Baum falsely advised them the park contained 44 "approved" mobilehome spaces. He knew and did not disclose

---

[3]The Stevensons objected to Baum's "undisputed fact" that their offer "represents the CONTRACT between the STEVENSONS and BAUM," asserting that this stated a legal conclusion. They did not obtain a ruling on this objection, however; thus we must deem the purported legal conclusion to be admissible evidence. (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 670 [25 Cal.Rptr.2d 137, 863 P.2d 207].) In any event, on appeal they consistently refer to their accepted offer as "the contract." Thus the point is waived.

[4]Baum declared in support of summary judgment that he understood the term to mean "any documents recorded with the county recorder." He alleged in his separate statement that this meaning of the term was an undisputed fact, citing to his declaration and to the deposition of Alice Stevenson. The Stevensons purported to dispute this "fact" and to object to it as opinion.

The Stevensons' evidentiary objection is waived because they obtained no ruling on it. (*Ann M.* v. *Pacific Plaza Shopping Center, supra*, 6 Cal. 4th at p. 670.) In any event, Alice Stevenson's deposition shows that she understood the term to mean "[t]hings that were recorded, that were legal." This is a layperson's way of putting what Baum said in more technical terms. Thus there is no genuine dispute about the parties' understanding of the term "those of record."

[5]They also alleged conspiracy by Baum and the real estate broker and agent named as codefendants. They dropped the conspiracy cause of action when they dismissed the codefendants.

that five of the spaces were constructed and laid out over a pipeline easement, that in the past he had had to remove the mobilehomes on those spaces to permit work on the pipeline, and that afterward he had replaced the mobilehomes and improved them with concrete foundations. He made these false representations intending that the Stevensons should rely on them. Ignorant of the falsity of the representations, they relied on them and bought the park. They did not learn the existence of the pipeline until notified by Chevron in 1993. Baum's fraudulent misrepresentations damaged them because, contrary to their belief at the time of purchase, they had acquired a park with only 39 unencumbered spaces.

After answering the complaint, Baum moved for summary judgment. After hearing argument, the trial court issued an order granting summary judgment.

## DISCUSSION

Summary judgment is properly granted to a defendant who shows either that one or more essential elements of the plaintiff's cause of action cannot be separately established or that there is an affirmative defense which bars recovery, unless the plaintiff sets forth specific facts showing a triable issue of material fact as to that cause of action or defense. (Code Civ. Proc., § 437c, subds. (n), (o)(2).)

■ " 'The elements of actual fraud, whether as the basis of the remedy in contract or tort, may be stated as follows: There must be (1) a false representation or concealment of a material fact . . . susceptible of knowledge, (2) made with knowledge of its falsity or without sufficient knowledge on the subject to warrant a representation, (3) with the intent to induce the person to whom it is made to act upon it; and such person must (4) act in reliance upon the representation (5) to his damage.' [Citation.]" (*Reed* v. *King* (1983) 145 Cal.App.3d 261, 264 [193 Cal.Rptr. 130], italics omitted.)

■ The Stevensons' claim of fraud has two components: affirmative misrepresentation (the number of approved mobilehome spaces) and concealment of material facts (the existence of the pipeline and the prior removal of mobilehomes to permit access to it). The first component fails for want of evidence: It is undisputed that at all relevant times the park has had 44 spaces approved by the county, as Baum represented to the Stevensons. They have attempted to raise a dispute on this point by asserting that five spaces are unusable, but they have adduced no evidence or authority to show that an approved space necessarily means a usable space. Thus the Stevensons have shown no ground for reversal based on their theory of

affirmative misrepresentation. We therefore turn to their theory of fraudulent concealment.

█ "Concealment is a term of art which includes mere nondisclosure when a party has a duty to disclose. [Citations.] . . . . [¶] In general, a seller of real property has a duty to disclose: 'where the seller knows of facts *materially* affecting the value or desirability of the property which are known or accessible only to him and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer. . . .' [Citation.]" (*Reed v. King, supra*, 145 Cal.App.3d at p. 265 [residential real estate transactions], original italics, fn. omitted.)

"Whether information 'is of sufficient materiality to affect the value or desirability of the property . . . depends on the facts of the particular case.' [Citation.] Materiality 'is a question of law, and is part of the concept of right to rely or justifiable reliance.' [Citation.]" (*Reed v. King, supra*, 145 Cal.App.3d at p. 265.)

█ The Stevensons do not contend that Baum's duty to disclose was statutory.[6] Baum does not contend that there is a different or lesser duty to disclose in a commercial real estate transaction, as here, than in a residential real estate transaction, and we have found no California case law so holding. (For the law of other states, see 14 Powell on Real Property (1997) § 84A.03[4], pp. 84A-35 to 84A-41.) Thus we take the standard set out in *Reed* to define the applicable duty. The existence of a triable issue of material fact as to Baum's alleged nondisclosure therefore depends on whether he failed to disclose any material information, *whether that information was known or accessible only to Baum, and whether Baum knew that that information was not known to the Stevensons or within the reach of their diligent attention.* (See *Reed v. King, supra*, 145 Cal.App.3d at p. 265.)

Relying on *Reed*, the Stevensons assert that Baum had a duty to disclose the pipeline's existence, its "actual" location, and his prior removal of mobilehomes that encroached on the easement. In their view, their agreement under the contract to take title with knowledge that it might be subject to easements of record did not relieve Baum of the duty to disclose all of these facts because: (1) This contract provision merely put them on constructive notice that they took title subject to prior recorded interests, which logically has no connection to Baum's duty of disclosure. (Cf. *Seeger* v.

---

[6]Civil Code section 1102 et sequitur, codifying the duty to disclose in residential real estate transactions, does not apply to transactions involving real property improved with more than four dwelling units. (Civ. Code, § 1102, subd. (a).)

*Odell* (1941) 18 Cal.2d 409, 415 [115 P.2d 977, 136 A.L.R. 1291] [purpose of recording acts to protect bona fide purchasers for value, not those who make fraudulent misrepresentations].) (2) If they had searched the public records, they would have learned the true nature of the easement, but not its "actual," "exact" location below the five mobilehome spaces or the fact that Baum had had to remove homes from those spaces in 1971. (3) These facts were material to the value of the property and peculiarly within Baum's knowledge. We are not persuaded.

Although it would no doubt have interested the Stevensons to learn of the 1971 incident, the primary material fact which potentially affected the value of the property was the "underlying" fact of the pipeline itself—a fact immediately ascertainable from the public records. A reasonable person in the Stevensons' position, knowing that the oil company's easement was for pipeline purposes, would have realized that the easement holder might exercise its right of access to the pipeline at any time. Moreover, it is undisputed that the recorded easement accurately described where the pipeline was; thus, if the Stevensons had consulted the public records, they would have learned that the pipeline underlay mobilehome spaces.[7]

By warning the Stevensons in the purchase contract that they took title subject to easements of record, Baum put them on notice of the above material facts, which satisfied his duty of disclosure under the express terms of the contract. Because Baum did not breach that duty, the Stevensons cannot state a cause of action for fraudulent nondisclosure as a matter of law. (*Reed* v. *King*, supra, 145 Cal.App.3d at p. 265.)

*Seeger* v. *Odell, supra*, 18 Cal.2d 409, on which the Stevensons rely for the proposition that constructive notice of matters of record is not a defense to fraud (*id.* at pp. 414-417), is distinguishable. In *Seeger* the defendants falsely told the elderly, unsophisticated plaintiffs that the plaintiffs' land had been sold to some of the defendants at an execution sale, so as to induce the plaintiffs into executing a lease with another defendant. In truth, no sale had occurred. Had the plaintiffs known this fact, which was ascertainable from public records not easily accessible to them, they would not have entered into the lease. (*Id.* at pp. 412-413.) *Seeger* is a case of active, affirmative,

---

[7]They assert without citing authority that a legal description of the easement's location, without an attached map, is insufficient to reveal its "actual," "exact" location. They further assert that variances may exist between a recorded location and an actual location. So far as these assertions amount to an argument that a legal description of an easement is insufficient as a matter of law to give a buyer notice of its true location, we reject the argument as unsupported by authority and contrary to law. (Cf. Civ. Code, § 1213; Evid. Code, § 664.)

intentional misrepresentation, not the mere alleged failure to disclose; moreover, *Seeger* did not involve facts which were just as accessible to the plaintiff as to the defendant. For both reasons, it is not on point.[8]

## DISPOSITION

The judgment is affirmed. Baum shall receive his costs on appeal.

Scotland, J., and Morrison, J., concurred.

A petition for a rehearing was denied July 23, 1998, and appellants' petition for review by the Supreme Court was denied September 16, 1998.

---

[8]At oral argument the Stevensons contended that Baum had a duty to disclose the asserted fact that the structures on the five spaces at issue were *in violation* of the easement agreement. We decline to address this contention for several reasons. First, the Stevensons did not expressly plead it in their complaint. (*FPI Development, Inc.* v. *Nakashima* (1991) 231 Cal.App.3d 367, 381 [282 Cal.Rptr. 508].) Second, their opposition to summary judgment did not clearly tender this theory. (See *Uriarte* v. *United States Pipe & Foundry Co.* (1996) 51 Cal.App.4th 780, 790 [59 Cal.Rptr.2d 332].) Third, though their brief on appeal mentions the alleged violation in passing, it makes no legal argument developing the point. (*People* v. *Turner* (1994) 8 Cal.4th 137, 214, fn. 19 [32 Cal.Rptr.2d 762, 878 P.2d 521].) Thus, taking an overview of this theory, we conclude it was raised for the first time at oral argument. It is therefore waived. (*Rebney* v. *Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1138, fn. 6 [269 Cal.Rptr. 844]; *Lotts* v. *Board of Park Commrs.* (1936) 13 Cal.App.2d 625, 636 [57 P.2d 215].)