Appellants James and Heidi Spinelli appeal the decision of the Stark County Court of Common Pleas that granted summary judgment on behalf of Appellees Smythe Cramer Company, Rexine Siemund, Elizabeth and Timothy Bair, Michael Lucius, T.K. Harris Agency and Advantage Inspections, Inc. The following facts give rise to this appeal. In 1998, Appellants James and Heidi Spinelli purchased a home located at 8149 Caroline Street, Massillon, Ohio, from Appellees Elizabeth and Timothy Bair. Eddie and Estelle Sexton once owned the property and have been convicted of murder and rape of their own children. Some of the incidents of rape allegedly occurred at the Caroline Street property. After the Sextons defaulted on their mortgage, Edie Johnson, of Homes by Edie, purchased the property at a Sheriff's sale. Ms. Johnson remodeled the interior of the home. In 1996, Appellees Elizabeth and Timothy Bair purchased the property from Ms. Johnson. The Bairs subsequently moved from the property, in April 1997, as a result of employment opportunities in California. Appellee Michael Lucius attempted to purchase the property from the Bairs and occupied the property for a short period of time in 1997. However, Mr. Lucius could not afford the property and thereafter became the real estate agent for Appellees Bair. In March 1998, appellants, from Massachusetts, hired Appellee Rexine Siemund, from Appellee Smythe Cramer Company, as their realtor. Appellee Siemund showed Appellant Heidi Spinelli and her friend, Margaret Balcom, approximately five to seven houses, including the property located on Caroline Street. Prior to entering into a purchase agreement for the Caroline Street property, appellants viewed the property several times. During each showing, the property was vacant. On her first visit to the Caroline Street property, Appellant Heidi Spinelli asked Appellee Siemund "why the property had been on the market so long, if somebody had been murdered there or something horrible had happened there." Appellee Siemund responded the property was priced too high for the neighborhood. On March 14, 1998, appellants entered into a purchase agreement to purchase the property for $148,000. Appellants hired Appellee Advantage Inspections, Inc. to conduct a basic visual inspection of the property. Appellee Advantage Inspections, Inc. performed the inspection on March 23, 1998. Appellants were present for the inspection. Two to three days prior to the closing date, Appellant James Spinelli went to a local bank to open a checking account. The bank employee recognized the street address and told Appellant Spinelli "that there was a family that had lived there in years past and there was some sort of book out on the family." Although Appellant Spinelli could not recall the specifics, the bank employee told him what had allegedly occurred at the property. Appellant James Spinelli asked Appellee Siemund to investigate the history of the house. On May 8, 1998, appellants closed on the house prior to learning any other history regarding the property. Appellant Heidi Spinelli subsequently read the book published about the property titled House of Secrets. The book described criminal events that allegedly occurred at the property. Thereafter, appellants listed the property for sale. On January 27, 1999, appellants received a contingent offer to purchase the property for $150,000. However, appellants never completed the sale of the property because the prospective buyers were not able to sell their house. On February 22, 1999, appellants filed a complaint containing claims of fraud, negligence and failure to disclose defects in the house. Appellees Elizabeth and Timothy Bair filed a motion to dismiss the complaint on the basis that there were no causes of action for fraud and/or failure to disclose the stigma of the Sexton history at the property. The trial court overruled Appellees Bairs' motion. Following the completion of discovery, all of the appellees filed motions for summary judgment. On December 2, 1999, the trial court granted all of the motions for summary judgment. Appellants timely filed a notice of appeal and set forth the following assignments of error for our consideration:
 I. AS THE INSTANT APPEAL IS ONE OF A SUMMARY JUDGMENT MOTION, THE STANDARD OF REVIEW IS DE NOVO.
 II. PURSUANT TO OHIO CIVIL RULE 56, SUMMARY JUDGMENT IS ONLY PROPER WHERE THERE ARE NO GENUINE ISSUES OF MATERIAL FACT IN DISPUTE, AND WHEN THERE IS A CLEAR ENTITLEMENT TO A JUDGMENT AS A MATTER OF LAW-IN THE CASE SUB JUDICE THERE ARE NUMEROUS MATERIAL ISSUES OF FACT IN DISPUTE AND THERE IS NO ENTITLEMENT TO A JUDGMENT AS A MATTER OF LAW.
 III. EACH OF THE APPELLEES FRAUDULENTLY FAILED TO DISCLOSE NUMEROUS MATERIAL FACTS ABOUT THE HISTORY, STRUCTURE, AND DAMAGES CONCERNING THE SUBJECT PREMISES, RENDERING EACH OF THE APPELLEES LIABLE FOR FRAUDULENT NONDISCLOSURE, WHICH NEGATES THE SUMMARY JUDGMENT MOTIONS OF THE APPELLEES.
 IV. OHIO REVISED CODE § 5302.30 REQUIRES DISCLOSURE OF MATERIAL DEFECTS TO HOME, YET, THE APPELLEES ADMITTEDLY DID NOT DISCLOSE DEFECTS KNOWN TO THEM, THEREFORE, SUMMARY JUDGMENT IS INAPPROPRIATE.
 V. BECAUSE OF THE ACTIVE CONCEALMENT OF DAMAGED AREAS IN THE SUBJECT HOME BY THE APPELLEES, SUMMARY JUDGMENT IS INAPPROPRIATE.
 VI. BECAUSE EACH OF THE APPELLEES HAS ENGAGED IN FRAUD, CAVEAT EMPTOR DOES NOT APPLY TO THE INSTANT ACTION, AND SUMMARY JUDGMENT IS INAPPROPRIATE BASED UPON CAVEAT EMPTOR.
 VII. BECAUSE OF THE HIGHER DUTY OF A REALTOR TO DISCLOSE FACTS AND THE ADMISSIONS OF BOTH LUCIUS AND SIEMUND, SUMMARY JUDGMENT AS TO EITHER OF THEM IS INAPPROPRIATE.
Standard of Review
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36. As such, we must refer to Civ.R. 56 which provides, in pertinent part: Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrates the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421,429, citing Dresher v. Burt (1996), 75 Ohio St.3d 280. It is based on this standard that we review appellants' assignments of error.
 I
Appellants contend, in their First Assignment of Error, that the applicable standard of review of a grant of a motion for summary judgment is de novo. Prior to addressing appellants' assignments of error, we have set forth the applicable standard of review above, which we agree is a de novo review. Pursuant to App.R. 16(A)(3), we do not find this argument to be properly asserted as an assignment of error. Instead, it is merely a statement by appellants regarding the applicable standard of appellate review. Thus, we will not address this argument as an assignment of error.
 III
In their Third Assignment of Error, appellants contend Appellees Smythe Cramer Company, Rexine Siemund, Elizabeth and Timothy Bair, Michael Lucius and T.K. Harris Agency fraudulently failed to disclose numerous material facts about the history, structure and damages of the property thus rendering these appellees liable for fraudulent nondisclosure. We disagree. An action for fraudulent nondisclosure requires the following elements: (1) a representation or, where there is a duty to disclose, concealment of fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. Cohen v. Lamko, Inc. (1984),10 Ohio St.3d 167, 169, quoting Friedland v. Lipman (1980),68 Ohio App.2d 255, paragraph one of the syllabus. In support of this assignment of error, appellants focus on the materiality of the Sexton history. In Van Camp v. Bradford (1993), 63 Ohio Misc.2d 245,255, the court explained a "material" fact "* * * would be likely, under the circumstances, to affect the conduct of a reasonable person with reference to the transaction in question." Heidi Spinelli stated, in her affidavit, that had she known of the defects in the home, both structural and historical, she would not have purchased the property. Appellants also rely on a case from California in which the court held that materiality is met where a plaintiff can prove a depressed value because of the history of the home. Reed v. King (1983), 145 Cal.App.3d 261. Thus, appellants conclude the determination of "materiality" should be considered by a jury and the trial court erred when it dismissed this issue on summary judgment. We conclude the trial court properly granted summary judgment on appellants' claim for fraudulent nondisclosure because appellees had no duty to disclose the history of the property and appellants knew the history of the property prior to closing on the sale of the property. In its judgment entry, the trial court reviewed case law that addressed the issue of stigma and whether psychological stigmas are a material fact that must be disclosed in a real estate transaction. The trial court concluded, and we agree with the conclusion, that "* * * as a general rule, * * * psychological stigmas are not a material fact that must be disclosed in a real estate transaction." Judgment Entry, Dec. 2, 1999, at 7. We also agree with the trial court that an exception exists if the buyers of the property indicate, prior to purchase, that such a stigma would be material to them and that he or she would not purchase the property if such a stigma existed. Id. There is no evidence contained in the record that indicates appellants informed Appellee Rexine Siemund that they were concerned about the criminal history of a property. Further, Appellant James Spinelli admitted, at his deposition, that he did not consider the history of the Sexton property to be a material defect. Specifically, appellant testified as follows: MR. SOLES: In your residential property disclosure statement you signed on December 2, 1998, line item L says other known defects, and you put possible wall damage in garage due to water leaks. In prior questioning you admitted to Mr. Richardson that the history of the Sexton house was not a material defect in your opinion.
* * *
MR. SOLES: Do you believe that that's a material defect to the property or in or on the property?
MR. SPINELLI: Not the history as it's stated. I stand by what I said before.
MR. SOLES: That it's not a material defect in or on the property?
MR. SPINELLI: Material defect to me is physical. Depo. James Spinelli at 154-155.
Finally, even if we were to conclude that the Sexton history is a material defect, appellants were aware of the property's history approximately two to three days prior to closing on the purchase of the property. At his deposition, Appellant James Spinelli testified about his knowledge: MR. SOLES: When was the first time you personally learned that the Sexton family had lived at this house?
MR. SPINELLI: Around the time we moved in. * * *
MR. SOLES: You learned this from a banker, I think?
MR. SPINELLI: Yes, I did.
MR. SOLES: Tell me about that circumstance.
MR. SPINELLI: We needed to open a checking account for the closing, to bring a check to the closing. And at that point the bank employee, I don't remember if she was a teller or not, recognized the address.
* * *
MR. SPINELLI: At that point, I asked her, "What do you know?" She told me that there was a family that had lived there in years past and there was some sort of book out on the family.
* * *
MR. SOLES: Did you go back and tell your wife?
MR. SPINELLI: Yes, I did.
* * *
MR. SOLES: This was prior to closing?
MR. SPINELLI: Yes, it was.
MR. SOLES: How many days before closing, do you recall?
MR. SPINELLI: Two to three.
* * *
MR. SOLES: Did you or your wife independently make any investigation concerning the history of the house prior to closing?
MR. SPINELLI: At that point, no. Id. at 78-81.
Based on the above, we conclude the Sexton history was not material to the transaction because a psychological stigma is not a material defect. Further, appellants knew of the Sexton history several days prior to closing on the property and therefore, cannot claim they relied upon misrepresentations regarding the history of the property. Finally, appellants failed to establish that they have been damaged by this alleged material defect. In fact, Appellant James Spinelli testified, at his deposition, that he received a contingent offer to purchase the property for $2,000 more than what he paid for the property, but the prospective purchasers were not able to sell their property. Id. at 76-77. For the foregoing reasons, we conclude the trial court properly granted summary judgment on appellants' claim for fraudulent nondisclosure. Appellants' Third Assignment of Error is overruled.
 IV
In their Fourth Assignment of Error, appellants contend Appellees Smythe Cramer Company, Rexine Siemund, Elizabeth and Timothy Bair, Michael Lucius and T.K. Harris Agency failed to comply with R.C.5302.30. We disagree. Specifically, appellants contend the real estate disclosure form indicates a new roof was put on the house in 1996; however, there were water leakage problems in different rooms of the house and the garage. The disclosure form also indicates no wood-boring insects. Appellants claim they had to hire an exterminator to rid the residence of spiders and carpenter ants. Finally, the disclosure form does not indicate the charred joists located in the garage. The statute at issue mandates that certain enumerated sellers of real estate complete all applicable items in a property disclosure form adopted by the Director of Commerce of the State of Ohio and deliver the form to the prospective purchaser. Pursuant to section (D) of said statute, the disclosure form shall disclose material matters relating to the property being sold that are within the actual knowledge of the sellers. Further, disclosure by the seller shall be made in "good faith," which is defined as honesty in fact. R.C.5302.30(A)(1). Pursuant to the language of the statute and the language contained in the disclosure form, Appellees Smythe Cramer Company, Rexine Siemund, Michael Lucius and T.K. Harris Agency did not have a duty to complete the real estate disclosure form and provide any information for the form. Instead, the sellers had the duty to complete the real estate disclosure form. Language contained in both R.C. 5302.30 and the form itself make it clear that the sellers had this duty. Thus, we conclude Appellees Smythe Cramer Company, Rexine Siemund, Michael Lucius and T.K. Harris Agency did not fail to comply with R.C. 5302.30. As the sellers of the property, this assignment of error focuses on Appellees Elizabeth and Timothy Bair's duty to complete the real estate disclosure form. Appellees Bair note that the purchase agreement contained "as is" language. In the case of Jenkins v. Kollar (Apr. 27, 2000), Cuyahoga App. No. 76049, unreported, at 2, citing Eiland v. Coldwell Banker Hunter Realty (1997), 122 Ohio App.3d 446,457, the court explained the effect of an "as is" clause on a claim for fraudulent nondisclosure: If a purchase agreement states that the buyer purchases real property in its "as is" physical condition, * * * the vendor has no duty to disclose latent defects. * * * An "as is" disclaimer clause in a real estate purchase agreement bars suit for passive nondisclosure, but does not protect a seller from action alleging positive misrepresentation or concealment. * * * Where a purchase agreement clearly indicates that the property is purchased as is, a purchaser may not bring a claim for fraudulent non-disclosure for alleged water problems in the basement.
We conclude that because the purchase agreement, in the case sub judice contained an "as is" clause, appellants cannot maintain a cause of action, against Appellees Bair, for fraudulent nondisclosure. Appellants' Fourth Assignment of Error is overruled.
 V
Appellants contend, in their Fifth Assignment of Error, that a question of material fact exists concerning whether Appellees Smythe Cramer Company, Rexine Siemund, Elizabeth and Timothy Bair, Michael Lucius and T.K. Harris Agency actively concealed damaged areas in the property. We disagree. Appellants maintain the painting of the basement walls by Appellees Lucius and Bair raises a question of fact regarding the issue of concealment. This assignment of error focuses on water problems in the basement and roof leaks. We conclude the record in this matter supports the trial court's conclusion that appellees did not actively conceal the water problems that existed at this property. In fact, the record indicates appellants knew of these water problems and decided to purchase the property despite this knowledge. Appellants employed a professional home inspector, Appellee Advantage Inspections, Inc., to inspect the property. Under the terms of the purchase agreement, appellants were to notify Appellees Bair if the home was unacceptable. The specific language is contained in paragraph N, subsection 1, and provides as follows: INSPECTION CONTINGENCIES: BUYER shall have 10 days after Acceptance to have professionals perform, at BUYER'S expense, the inspection(s) indicated below. BUYER shall notify SELLER in writing within five (5) days after any inspection of any material condition(s) unsatisfactory to BUYER. If SELLER agrees within 5 days after notification to correct said condition(s), then this Agreement shall remain in full force and effect. If SELLER does not so elect, the BUYER, at BUYER'S option, may either waive such condition(s) and accept the Property in its "AS IS" condition or terminate this Agreement in accordance with N(2) below.
Appellants hired Appellee Advantage Inspections, Inc. to do a visual inspection of the property. At his deposition, Appellant James Spinelli testified that he noticed stains on the ceilings. Depo. James Spinelli at 35. Appellant Spinelli admitted, at his deposition, that he did not believe appellees attempted to conceal the water stains on the ceiling. Id. at 36. Appellant Spinelli further admitted that he knew either from the inspection or the report of the inspection that the inspector noted that the basement was damp. Id. at 39. Appellant James Spinelli also knew of the water in the doorway of the basement prior to closing on the property. Id. Appellant Spinelli acknowledged that the inspector recommended that he regrade the house to prevent some of the water problems. Id. at 35-36. Appellant Spinelli also knew about the problems with the cement around the front steps. Id. at 39. Appellant Heidi Spinelli testified that on a walk-through with Appellee Lucius she observed water on the floor of the entryway in the basement. Depo. Heidi Spinelli at 20-21. Based on appellants' testimony, we find the record supports the conclusion that appellees did not purposely conceal the water problems with the property. Appellants knew of these problems prior to and as a result of the visual home inspection. However, pursuant to the language of the purchase agreement, appellants did not request Appellees Bair to make any repairs to the property. The trial court properly granted summary judgment. Under this assignment of error, we will also address the claim against Appellee Advantage Inspections, Inc. ("Advantage"). In their brief, appellants do not independently address, as a separate assignment of error, the trial court's granting of summary judgment on behalf of Appellee Advantage. However, a review of the record indicates appellants asserted a separate claim of negligence, solely against Appellee Advantage, in the third count of their complaint. For the reasons that follow, we conclude the trial court did not err when it granted summary judgment on appellants' negligence claim against Appellee Advantage. In order to maintain a cause of action for negligence, appellants must establish the following: duty, breach of that duty, and damages proximately resulting from the breach of that duty. Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142. Appellants allege, in support of their negligence claim, that Appellee Advantage "* * * failed to notice numerous defects, including, but not limited to, a leaking roof, wood-boring infestation and structural supports burned and charred by fire." Complaint at 6. The inspection agreement entered into by the parties indicates appellants opted for a report of "visual observations of apparent conditions." Appellants expressly declined a technically exhaustive inspection of the property. The inspection agreement provided as follows: * * * We report visible defects (based upon non-invasive visual observation only) apparent on the day of inspection. The inspection is furnished on an opinion only basis and is made solely for the information of the customer.
THE INSPECTION AND REPORT ARE NOT INTENDED OR TO BE USED AS A GUARANTEE OR WARRANTY, EXPRESS OR IMPLIED. THIS REPORT IS NOT AN INSURANCE POLICY THAT ITEMS FOUND ACCEPTABLE WILL REMAIN SO FOR ANY PERIOD OF TIME, NOR THAT EVERY DEFECT WILL BE DISCOVERED. It is further understood and agreed that The Company is not an insurer and does not insure against defects found in the property. * * * (Emphasis sic.)
The record supports Appellee Advantage's claim that it did not breach its duty by failing to disclose apparent water leakage problems to appellants. In fact, appellants testified, at their depositions, that based on the report issued by Appellee Advantage following the inspection, they were aware of water stainage and water problems in the house. The report specifically indicated water stains in the basement, dampness in the home and cracks in most ceilings. Further, Mr. Brandyberry, the person who conducted the inspection, recommended to appellants that they regrade the house to prevent some of the discovered water problems. As to their claim of wood-boring insects, the inspection agreement indicates that appellants did not request Appellee Advantage to inspect for wood-boring insects. Further, both appellants testified, at their depositions, that they are not making a negligence claim for wood-boring insects. Depo. James Spinelli at 38; Depo. Heidi Spinelli at 20. Finally, with regard to the burned and charred structural supports in the garage, the record supports the conclusion that these beams are open and obvious. Appellants both admitted this fact at their depositions. Depo. James Spinelli at 96; Depo. Heidi Spinelli at 39. Appellee Lucius testified that the beams, in the garage, were reinforced with new beams when Edie Johnson remodeled the property. Depo. Michael Lucius at 89. Further, appellants did not present any evidence to indicate they have suffered any damages as a result of the burned and charred beams. Based on the above, we conclude the trial court properly granted Appellee Advantage's motion for summary judgment as to appellants' claim for negligence. The record supports the conclusion that Appellee Advantage did not breach its duty in conducting the inspection and although Appellee Advantage did not point out the burned and charred beams, these beams were open and obvious and appellants have not suffered any damages due to the presence of these beams. Appellants' Fifth Assignment of Error is overruled.
 VI
In their Sixth Assignment of Error, appellants contend that because each of the appellees engaged in fraud, the doctrine of caveat emptor is inapplicable and the trial court should not have granted the motions for summary judgment. This assignment of error is moot having already determined, in appellants' Third Assignment of Error, that appellees did not commit fraud by failing to disclose defects in the property. VII In their final assignment of error, appellants contend the trial court erred when it granted Appellee Lucius' and Siemund's motions for summary judgment because as real estate agents they had a higher duty to disclose facts. We disagree. A review of the complaint indicates appellants did not assert a claim for negligence against Appellees Lucius and Siemund. Therefore, they cannot now argue, for the first time on appeal, that Appellees Lucius and Siemund breached their duty to disclose material facts about the property to appellants. Appellants' Seventh Assignment of Error is overruled.
We will not address appellants' Second Assignment of Error as it fails to make any legal arguments and merely contains the applicable standard of review for summary judgment proceedings and various facts that appellants claim are in dispute. We have addressed the standard of review and applicable facts in the remaining assignments of error. Accordingly, appellants' Second Assignment of Error is moot.
For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
 ______________________ Wise, J.
Gwin, P.J., and Farmer, J., concur.