[Civ. No. 25895. First Dist., Div. Three. Sept. 30, 1970.]

BOB J. DRIVER, Plaintiff and Appellant, v.
EARL J. MELONE et al., Defendants and Respondents.

748

**COUNSEL**

Cowan, Henze, Morken & Stone and Douglas G. Cowan for Plaintiff and Appellant.

Hoey & Hoey, Cyril Viadro, Miller, Starr & Regalia and Edmund L. Regalia for Defendants and Respondents.

**OPINION**

**BROWN (H. C.), J.**—Appellant, Bob J. Driver, purchased from respondents, Earl and Genevieve Melone, a parcel of land improved with an old and dilapidated house. A few months after the sale was consummated the county fire department posted it as dangerous and declared it condemned because of defective electric wiring. Appellant instituted an action for rescission and damages and claimed at trial that respondents misrepresented the conditions of the premises and concealed their knowledge that the property was to be condemned. The trial court disagreed with these claims and rendered judgment for defendants-respondents.

Appellant contends on appeal that the evidence does not support the trial court's finding that there was no misrepresentation and, further, the trial court erred in failing to make a finding, after request, on the issue of concealment.

The parties are in essential agreement as to the facts. It is the interpretation of those facts which provoked the opposing contentions.

The respondents were the owners of a house and lot of speculative value because of its adjacency to the ramp of a Contra Costa County freeway. The house was old and cheaply constructed. It also had deteriorated by reason of its age, abuse and neglect.

In July and August of 1964 the Contra Costa County Building Department advised the Melones by letters that certain improvements were necessary, as the building was substandard, dangerous and did not conform to the building codes. The Melones thereafter listed the property for sale with real estate broker Paul Hunter.[1] The listing provided: ". . . This property is offered *as is*. . . . Value is in land—near freeway on offramp." (Italics added.)

In November of 1964 appellant, Bob Driver, and an associate, Gerald Mullins, evinced interest in the property and called on the broker, Paul Hunter, who testified that he told Mullins that the property is "really a dog . . . It's really in bad shape. . . . It's sitting on mudsills. . . . The front porch is dilapidated; it's dangerous. . . . There's faulty wiring . . ."

Appellant Driver was a university graduate with a degree in engineering. During a period of five years preceding his execution of the agreement, he had made some 25 or 30 purchases of real property for investment purposes.

Mr. Mullins, who was associated with appellant in the purchase of the property, was also experienced in real estate transactions. He was a real estate mortgage loan consultant and had done appraisal work for savings and loan associations.

At the time of the negotiations between appellant and respondents, the premises were occupied by a tenant who paid $80 per month rent. Both appellant and Mullins inspected the property. On the occasion of one of the visits of inspection, appellant was told by the tenant that the property was in "terrible shape."

Prior to executing the agreement to purchase, appellant called upon the county building authorities and inquired as to the condition of the building. He was told by an Inspector Taylor to get a letter of authorization from the owner which would then permit the building department to furnish

---

[1] Respondent Hunter was brought into the action by a cross-complaint for indemnity filed by the Melones. Since the trial court found in favor of defendants Melone, it follows that there were no damages to be indemnified.

him with information in their records. Instead of pursuing the directions of the building inspector, appellant proceeded thereafter on November 28, 1964, to consummate the sale and to take possession of the premises.

Appellant Driver signed the deposit receipt and agreement of sale and paid the required deposit of $500. The total purchase price was $13,000. The agreement of sale provided that appellant was purchasing the property "as is." It also contained a provision (Item 4) that it was subject to inspection by the buyer for a period of five days following the contract date. Three days after signing the agreement appellant wrote to respondent Hunter as follows: ". . . The purpose of this letter is to remove the contingency as indicated in item (4) of my agreement dated November 28, 1964, to purchase the residence known as 1508 Cervato Drive, Alamo, California. Approval of the house is hereby acknowledged. . . ."

Several days after he executed the deposit receipt and agreement to sell, but prior to the close of the escrow, appellant requested Hunter to obtain a letter from the Melones affirming the fact *that there were no condemnation proceedings pending on the property*. Respondents Melone, pursuant to to this request, wrote as follows: "To Whom It May Concern: As of the above date, I hereby declare that to my knowledge there is no condemnation proceedures [*sic*] by Contra Costa County authorities, pending or otherwise, relative to the property . . . known as 1508 Cervato Drive, Alamo, California being Parcel #03, Page #37, Contra Costa County Assessor's Map Book #188. . . ."

At the time the Melones informed appellant that there were no condemnation proceedings pending, the county building authorities had written and the Melones had received the two letters previously referred to demanding that the building code violations be remedied. Appellant argues that he would not have closed the escrow, or made the offer, had he known about the county's activities, since without income the property was worthless to him, and that appellant's associate, Mullins, would not have advised him to buy the property if he was aware of the problems with the county. Appellant claims Melone signed the letter of December 4 knowing that it would be relied upon by the buyer to close the transaction, and knowing that the "purchasers should be aware of the abatement proceedings."

In determining whether there was a concealment or misrepresentation, the testimony of a Mr. Taylor, a building inspector for the County of Contra Costa, is of particular importance. He testified that the defective wiring was obvious to anyone who inspected the building. Likewise the wooden foundations were unobscured and were conspicuous without the necessity of looking through the access hole under the house. He acknowledged that if a person just took a walk around the house it would become

apparent that the house was sitting on wood and not concrete, and the mudsills, which rested directly on earth, also disclosed evidence of the presence of rot and termite infestation. On the question of condemnation, Inspector Taylor stated that his department had not at any time started a condemnation action on the property, and that if certain repairs were made to the property his department, under an established policy, would permit occupancy and would give the owner three years to satisfy their requirements. The procedure in a condemnation action required reporting the matter to the district attorney's office with a request for a hearing in the presence of the owner to determine if all parties could cooperate to have the building conform to the building code or to work out a solution to the problem, and, that failing, the matter would be referred to the board of supervisors to obtain a resolution to start a formal condemnation. None of these proceedings was commenced by the building department up to the time of trial some two years subsequent to appellant's purchase of the property.

Appellant's contention that he would not have purchased the property if he had known of the problem with the building department is not consistent with his actions.

The evidence seems clearly to imply that he, as an engineer and as an experienced dealer in real estate, was not interested in the building department's requirements. Those defects were glaringly obvious. It is noted that appellant did not seek to elicit from respondents any specifications of the repairs that were necessary to have the building conform to the county building codes. His only query concerned the pending of condemnation proceedings and this concern was manifested *after and not before he executed the agreement of sale.* Appellant's failure to follow the advice of the building department to obtain an authorization to inspect the county files is puzzling except that his counsel supplied a partial answer when arguing the appeal. He stated that appellant did not make a positive inquiry of the building department because he did not desire "to stir them up" or "to activate their interest in the property."

It also appears that appellant's lack of interest in the county building department's requirements is evidenced by his failure to obtain a building permit when he made rather extensive repairs to the building. The only inference to be drawn from the failure to obtain the building permit is that appellant was well aware of the requirements of the building department and did not desire to be officially informed of noncompliance with their demands.

Appellant's associate, Mullins, was equally lacking in interest in anyone else's views concerning the property. He relied on his own inspection. He

testified that "Mr. Hunter made several suggestions to me about improvements—and he also pointed out some of the conditions of the property. I must admit that I did not pay total attention to Mr. Hunter—as I do not to anybody else that tells me about property—as I make my own evaluation."

It is also to be noted that appellant, in addition to the obvious condition of the property, was put to some notice of defects by the wording of the agreement. ■■■■ The agreement specified that he was purchasing the property *"as is."* (Italics added.) It is quite true that this clause alone does not in itself protect the sellers or absolve them from liability for misrepresentation or passive concealment.

In the early case of *Smith* v. *Richards* (1839) 38 U.S. 26 [10 L.Ed. 42], involving the sale of a purported gold mine, the seller wrote to the buyer and said: ". . . 'I, however, sell it for what it is, gold or snow-balls; and I leave it to you to decide, whether you will take it at my price, or not. . . .' " (P. 39 [10 L.Ed. p. 49].)

The court said at page 35 [10 L.Ed. at p. 47]: "It is an ancient and well-established principle, that whenever *suppressio veri or suggestio falsi* occur, and more especially both together, they afford a sufficient ground to set aside any release or conveyance."

■■■■ This ancient principle thus expressed with sententious brevity is a principle of law today but is inapplicable under the facts of this case.

In *Lingsch* v. *Savage,* 213 Cal.App.2d 729 [29 Cal.Rptr. 201, 8 A.L.R.3d 537], the court said: "It is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property which are known or accessible only to him and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer. [Citations.] . . ." (P. 735.)

". . . A provision in a contract of sale that the buyer takes the property in the condition in which it is, or 'as is,' does not necessarily confer on the seller a general immunity from liability for fraud. It is fairly well established in respect to sales of personal property that such a provision 'does not prevent fraudulent representations relied on by the buyer from constituting fraud which invalidates the contract or is a ground for damages.' [Citations.]" (Pp. 740-741.)

■■■■ While the "as is" provision does not relieve a seller of all responsibility of disclosure, it is a factor to be considered with all other circumstances in determining whether the buyer has been misled.

At page 738 of *Lingsch* v. *Savage, supra,* the court, however, specified the elements making up a cause of action and stated: "The elements of a cause of action for damages for fraud based on mere nondisclosure and involving no confidential relationship would therefore appear to be the following: (1) Nondisclosure by the defendant of facts materially affecting the value or desirability of the property; (2) Defendant's knowledge of such facts and of their being unknown to or beyond the reach of the plaintiff; (3) Defendant's intention to induce action by the plaintiff; (4) Inducement of the plaintiff to act by reason of the nondisclosure and (5) Resulting damages. [Citations.]"

In the case before us these essential elements are not present.

Here we do not have a fiduciary relationship between the parties. Also, there is an absence of a duty created by superiority of intellect, training or ability of the seller. The appellant-buyer is a university graduate engineer, skilled in dealing in real estate transactions with a distinct knowledge of value and requirements of repairs and their costs. He also had an associate in the transaction whose very business—that of a loan broker and appraiser—made him familiar with properties. In addition, not only was there no misinformation, but also the sellers' real estate broker fully advised the buyer that the property was a "dog" and in a dangerous, defective and dilapidated condition.

The letter from respondents to appellant stating that there were no condemnation proceedings pending was accurate. This was confirmed by Inspector Taylor of the building department who stated that up to the time of trial his department had not commenced those procedures. Appellant does not dispute the testimony but argues that in effect he should have been made aware of the department's demands to respondents, which facts were omitted in respondents' letter.

Whatever information was in the possession of the respondents was known, or readily accessible, to the appellant. There is no evidence that respondents had information concerning the property which was unknown or beyond the reach of appellant, or that appellant was induced to purchase the property by a nondisclosure of relevant and material information. He was specifically instructed by the county building department to obtain an authorization which would permit inspection of records. This appellant chose not to do.

It is true that the trial court failed to make a specific finding, after request, on the issue of concealment. Code of Civil Procedure section 634 requires the court to make a finding of fact on every material issue necessary to support the judgment. Here the court did find that there was no

misrepresentation, and, we believe that, while it would have been preferable to make the finding on the specific issue, findings that were made imply a conclusion in favor of respondents. We therefore conclude that now to require such finding would be an empty formalism and that the evidence fully supports the judgment.

For the foregoing reasons the judgment is affirmed.

Draper, P. J., and Caldecott, J., concurred.