[No. C045865. Third Dist. Nov. 29, 2005.]

BARRY HINESLEY, Plaintiff, Cross-defendant and Appellant, v. OAKSHADE TOWN CENTER, Defendant, Cross-complainant and Respondent.

COUNSEL

Jay-Allen Eisen Law Corporation and C. Athena Roussos for Plaintiff, Cross-defendant and Appellant.

Law Office of Watson, Khachadourian & Iams and Gilbert Khachadourian for Defendant, Cross-complainant and Respondent.

OPINION

**CANTIL-SAKAUYE, J.**—Plaintiff Barry Hinesley (Hinesley) challenges on appeal the summary judgment granted defendant Oakshade Town Center (Oakshade) on Hinesley's first amended complaint for fraud and rescission of his commercial lease with Oakshade. Hinesley contends Oakshade did not conclusively negate or show Hinesley could not prove an essential element of his case. We disagree and shall affirm the judgment.

## BACKGROUND

In July 1998 Hinesley signed a five-year commercial lease with Oakshade for 1,200 square feet of retail space in a shopping center located in the south

part of the city of Davis in Yolo County. In September 1999, Hinesley filed this action against Oakshade alleging causes of action for fraud and rescission of the lease. Oakshade answered the complaint, generally denying the allegations and asserting numerous affirmative defenses. Hinesley relinquished the leased premises in April 2000, and in September 2000, Oakshade filed a cross-complaint against Hinesley for rent due under the lease and for attorney fees. After Oakshade's motion for judgment on the pleadings was granted as to Hinesley's fraud cause of action with leave to amend, Hinesley filed a first amended complaint for fraud based on fraudulent concealment of material facts and for rescission.

In his first amended complaint Hinesley alleged he and Oakshade, during the spring of 1998, had negotiated the terms and conditions of a commercial lease to Hinesley of a suite within a shopping center being developed by Oakshade in Davis. Hinesley and Oakshade later executed a lease, dated July 6, 1998, for a 1,200 square foot space at the Oakshade Town Center Shopping Center for a term of five years. Hinesley alleged that during the negotiations, Oakshade's agent and representative, Paul Petrovich (Petrovich), told Hinesley the regional restaurant chain Dos Coyotes, the international coffee shop chain Starbucks, and the international ice cream and yogurt vendor chain Baskin-Robbins would be leasing and occupying suites near the suite Hinesley was to lease. It was represented all three chains would commence operations by the end of 1998.[1]

Hinesley alleged Petrovich knew when these representations were made that Oakshade did not have any contractual commitment from any of these businesses. Hinesley alleged Oakshade, through Petrovich, had an obligation to make a full and truthful disclosure of the contractual status of these prospective tenants once it elected to make some representations about them. Instead, in order to mislead Hinesley, Oakshade concealed the true facts and failed to qualify the representations.

Hinesley's first amended complaint alleged he incurred costs, had to pay rent and other lease obligations for the leased premises, and lost profits directly attributable to the lack of foot traffic as the result of his reasonable reliance on the misrepresentations about his cotenants. He alleged Oakshade failed to disclose the true facts concerning the prospective tenancies of Starbucks, Baskin-Robbins and Dos Coyotes, which facts, if they had been accurately disclosed to Hinesley "would have induced him not to enter into the subject lease, or, alternatively, to execute the lease with a later effective

---

[1] Starbucks and Baskin-Robbins never leased space from Oakshade. However, Marble Slab Creamery (an ice cream store) and Common Grounds (a coffee house) did become tenants. Dos Coyotes did become a tenant of Oakshade, but its lease did not commence until December 2000.

commencement date tied to the occupancy of one or more of the aforementioned prospective major tenants." In addition to damages, he sought rescission of the lease.

The case went to nonbinding arbitration. The arbitrator denied both Hinesley's claims for fraud and rescission and Oakshade's claims for rent and attorney fees. After both parties requested trial de novo, Oakshade moved for summary judgment on the grounds that the alleged statements were nonactionable opinion and the alleged concealment was not material because paragraph 25.33 of the lease provided Hinesley was not relying on the existence of other tenants in entering the contract and because Hinesley never expressed any concern or raised any question about the other tenants to Oakshade.

The trial court granted the motion, relying on the undisputed facts that Hinesley did not advise Oakshade that the existence of the other tenants was important to his decision, did not ask if other tenants had signed leases, and did not advise Oakshade the start date of his lease should be tied to the arrival of other tenants. The trial court concluded a lessee in a commercial lease situation has a duty of discovery. Judgment was entered in favor of defendant Oakshade on Hinesley's complaint.

On Oakshade's cross-complaint for rent, the trial court granted summary adjudication for Oakshade, finding Hinesley liable for the outstanding rent due under the lease, but required the parties to proceed to trial on Hinesley's defense of mitigation of damages. A jury found Oakshade had acted unreasonably in its efforts to mitigate its damages, and that Oakshade could have further mitigated damages in the amount of $5,000. The court applied such further offset to the rent determined to be due and entered a judgment against Hinesley on Oakshade's cross-complaint in the amount of $57,506.52. The trial court subsequently ordered Hinesley to pay Oakshade attorney fees of $90,876.80.[2] This appeal followed.

Hinesley claims on appeal there were triable questions of fact as to whether Petrovich's unqualified representations regarding the three other tenants were "material" assertions of "fact" or, at the least, opinions for which he had no reasonable basis.

---

[2] The parties also assert the trial court awarded costs of $3,583.35 to Oakshade, but the record on appeal does not contain any signed and filed order or amended judgment including such award.

## DISCUSSION

### I.

### Standard of Review

A motion for summary judgment shall be granted when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A moving defendant is entitled to judgment as a matter of law when the defendant shows without rebuttal that one or more elements of the plaintiff's case cannot be established or there is a complete defense to that cause of action. (*Id.*, subds. (a), (o); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 356 [100 Cal.Rptr.2d 352, 8 P.3d 1089].)

On appeal after a summary judgment has been granted, we review de novo the trial court's decision to grant summary judgment and are not bound by the trial court's stated reasons. (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1001 [67 Cal.Rptr.2d 483]; *Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 951 [62 Cal.Rptr.2d 142].) In reviewing the summary judgment, we apply the same three-step analysis used by the trial court: we (1) identify the issues framed by the pleadings; (2) determine whether the moving party has negated the opponent's claims; and (3) determine whether the opposition has demonstrated the existence of a triable, material factual issue. (*Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261 [76 Cal.Rptr.2d 382].) Like the trial court, we view the evidence in the light most favorable to the opposing party and accept all inferences reasonably drawn therefrom. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

### II.

### Issues Pled

■ Hinesley's first amended complaint pled causes of action for fraud and rescission based on fraud in the inducement. The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 [49 Cal.Rptr.2d 377, 909 P.2d 981]; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 772, p. 1135.) ■ Fraud in the inducement is a subset of the tort of fraud. It "occurs when ' "the promisor knows what he is signing but his consent is induced by fraud,

mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable." ' " (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 415 [58 Cal.Rptr.2d 875, 926 P.2d 1061], quoting *Ford v. Shearson Lehman American Express, Inc.* (1986) 180 Cal.App.3d 1011, 1028 [225 Cal.Rptr. 895], italics omitted.)

Oakshade's summary judgment focused on the fraud elements of misrepresentation and justifiable reliance. Specifically, Oakshade claimed the alleged representations were nonactionable opinions about the future actions of third parties. Oakshade also claimed the representations were not material assertions on which Hinesley reasonably relied because a specific section of the signed lease expressly repudiated any such reliance and Hinesley never expressed any concern or raised any question about the other tenants to Oakshade.

### III.

### There Existed a Triable Issue of Fact as to Whether Petrovich's Representations Were Statements of Fact or of Nonactionable Opinion

Oakshade contended in its motion for summary judgment that Hinesley could not establish fraud because the alleged statements by Petrovich were nonactionable opinion. Oakshade relied on the deposition testimony of Wayne Beck (Beck), an acquaintance of Hinesley who was present at the meeting ·at which the alleged representations were made. According to Oakshade, Hinesley's own witness Beck testified Petrovich had made no specific statements regarding the other tenancies; Beck was simply left with the impression that the tenants were "coming soon" with no specific time frames for their arrival. According to Beck, Petrovich stated he was merely "working with" these other tenants.

Oakshade argued such statements could not support an action for fraud citing the general rules that an action for fraud must be based on a statement of fact, not opinion, and that statements as to future actions by some third party are deemed nonactionable opinions. (*Nibbi Brothers, Inc. v. Home Federal Sav. & Loan Assn.* (1988) 205 Cal.App.3d 1415, 1423 [253 Cal.Rptr. 289]; *San Francisco Design Center Associates v. Portman Companies* (1995) 41 Cal.App.4th 29, 43–44 [50 Cal.Rptr.2d 716]; 5 Witkin, Summary of Cal. Law, *supra*, Torts, § 774, p. 1137.)

In opposition to Oakshade's motion for summary judgment Hinesley disputed the summarization of Beck's deposition testimony regarding the representations made by Petrovich. Hinesley pointed out Beck did not testify that

Petrovich made no specific statements about other tenants, but only that he could not recall the specifics of the conversation. Although Beck could not recall any specific time or date mentioned for the arrival of the other tenants, Beck was left with the impression "it was soon. Whatever soon is." Beck remembered that Petrovich pointed to particular locations on the shopping center site plan for the three other tenants, indicating they were going to locate there. Beck said there was no discussion regarding the status of contract negotiations with the three tenants. According to Beck, the question did not come up. However, nothing was said that left Beck with the impression there was some conditional nature to their future tenancy. When asked later whether he recalled anything to the effect that Petrovich was in negotiations with these other tenants but they had not yet signed, Beck said he was sure there was some conversation to that effect or he would not have had the feeling they were coming. Beck suggested "it would have probably been in the context of, yes, we are working with them, or something to that effect[,]" but he could not recall the exact conversation.

In opposition to the motion for summary judgment Hinesley submitted a declaration from Beck in which Beck said Petrovich "never stated that these three major tenants . . . were potential tenants, possible tenants, likely tenants, probable tenants etc. [Petrovich] pointed to the lease spaces on his site plan of his shopping center and stated definitely where each of these three major tenant[s] were going to be located. There is no question in my mind that Mr. Petrovich presented these three major tenants as definite."

Hinesley also submitted in opposition to the summary judgment portions of his own deposition. Hinesley testified at his deposition Petrovich told him Starbucks would be opening right on the corner of building 5 and they would be open by year end 1998. Petrovich showed him a space in building 6 that was going to be a restaurant that was known as Dos Coyotes. It would also be open by the end of 1998. The other tenant that was going to be coming by the end of 1998 was Baskin-Robbins, but it was not totally decided which suite it was going to take. Petrovich did not say he had a signed lease with each of these tenants, but neither did he say he was in negotiations with them. As Petrovich described the location of the other tenants, Hinesley had no reason to believe anything else other than the fact they were coming.

Hinesley's opposition to Oakshade's motion for summary judgment, thus, showed a conflict in the evidence over what Petrovich said, and expressed by gestures, to Hinesley regarding Dos Coyotes, Starbucks, and Baskin-Robbins. Hinesley's version was not obviously false and if believed, Hinesley's description of the representations made by Petrovich regarding at least Dos Coyotes and Starbucks, supported by Beck's declaration and deposition testimony taken in context, contained an implied assertion that Oakshade had

already signed leases with these particular businesses.[3] The definite description of where they were going to be located and that they were going to be operating by the end of the calendar year suggested they were already tenants of Oakshade in the process of opening their businesses. This was a false assertion of existing fact, not an opinion regarding future actions of third parties. Petrovich did not disclose to Hinesley Oakshade's true contractual status with these businesses. A triable issue existed, therefore, as to what Petrovich actually represented to Hinesely; whether Petrovich's expressions were actionable misrepresentations of facts or nonactionable opinions about the future.

We turn to the question of whether Oakshade showed, in its motion for summary judgment, that such misrepresentations, even if found to have been made, were not material assertions on which Hinesley justifiably relied in deciding to sign his lease with Oakshade.

## IV.

### Oakshade Successfully Demonstrated No Triable Issue of Fact Existed as to Whether Hinesley Justifiably Relied on Any Material Misrepresentation or Concealment

Oakshade claimed any representations made by Petrovich regarding the three other tenants were not material assertions on which Hinesley justifiably relied because a specific section of the signed lease expressly repudiated any such reliance and Hinesley never expressed any concern or raised any question about the other tenants to Oakshade.

Oakshade submitted, as part of the evidence supporting its summary judgment motion, a copy of the lease between Hinesley and Oakshade. Paragraph 25.33 of the lease provides: "Lessor reserves the right to effect such other tenancies in the Shopping Center as Lessor in the exercise of its judgment shall determine to bet [sic] promote the interest of the Shopping Center. *Lessee does not rely on the fact nor does Lessor represent that any specific Lessee of [sic] type or number of Lessees shall during the term of this Lease occupy any space in the Shopping Center.*" (Italics added.)

Oakshade cited to Hinesley's deposition in which Hinesley stated he was certain he had read paragraph 25.33, as he had read all other sections in the

---

[3] According to Hinesley, Petrovich said it was not totally decided which suite Baskin-Robbins would be taking. The only reasonable inference from such statement is that Baskin-Robbins had not yet actually signed a lease for the property. In contrast to the definite statements regarding Dos Coyotes and Starbucks, Hinesley could not have understood Baskin-Robbins already was a tenant of Oakshade. Even under the version of Petrovich's statements given by Hinesley, it was clear some future action was still required before Baskin-Robbins came to the shopping center.

contract. Oakshade pointed out Hinesley had a lawyer assist him in reviewing the lease and Hinesley never requested any revisions to paragraph 25.33 of the lease despite requesting and receiving revisions to a number of other provisions in the lease.

In his declaration submitted in support of the summary judgment motion, Petrovich stated that at the time Hinesley executed his lease the shopping center already had a Safeway store and a Rite Aid store. The Safeway store occupies approximately 40,000 square feet of space and is the largest grocery store in Davis. The Rite Aid store has approximately 17,500 square feet and is the only pharmacy serving south Davis. In comparison to the 103,713 total square footage of the shopping center, the total square footage which would have been occupied by Dos Coyotes, Starbucks and Baskin-Robbins was 5,400. Hinesley never asked if these three other tenants had signed leases, did not discuss with Petrovich the potential benefits, such as traffic volume or spending patterns, of such tenants, never told Petrovich that he was signing this lease based on those three tenants coming, and never said the start date of his lease should be tied to the arrival of those three tenants.

In opposition to Oakshade's summary judgment motion, Hinesley admitted paragraph 25.33 was in the lease, but stated it was not emphasized in any manner. Hinesley acknowledged he had read the entire lease prior to signing it, but pointed to a portion of his deposition in which he clarified that he did not remember stopping at paragraph 25.33 and spending any time reviewing it to a point where he could recall looking at that particular paragraph. Hinesley said he paid for and obtained only a limited review of the lease by his attorney. He asked the attorney to take a "precursor look at this contract" just for "obvious improprieties[.]" He did not ask for an in-depth, line-by-line review. He did not mention to his attorney any of the representations made by Petrovich regarding other tenants. As the attorney was unaware of such representations, he did not bring paragraph 25.33 to Hinesley's attention. The attorney did not advise Hinesley in the preparation of the lease modifications proposed by Hinesley. Hinesley agreed he never requested revision to paragraph 25.33.

Hinesley did not dispute the square footage of the various stores in the shopping center and admitted Safeway and Rite Aid were open when he signed his lease. Hinesley contended, however, the issue was not size, but location. Safeway and Rite Aid were located across the parking lot from the space Hinesley was leasing, while Dos Coyotes, Starbucks and Baskin-Robbins were supposed to be locating next to or nearby Hinesley in the two buildings at the point of the triangular shopping center property.

In his deposition testimony, submitted in opposition to the summary judgment motion, Hinesley said he had no reason to doubt Petrovich's

assertions or gestures or to query him further. Petrovich's representations regarding the three other tenants were very important to Hinesley and he relied on those representations in making his decision to locate his store at this shopping center. He "took a lot of convincing." He made his decision "on the representation of what the tenant mix would be in very short order." Hinesley thought it made sense to begin his tenant improvements and get his store ready to open at the same time as when the other tenants would be up and running at the end of the year. If he had known the other tenants were going to be in at a much later date, Hinesley would have changed the commencement time for his lease to coincide with the other tenants' arrival.

In contending his deposition testimony establishes a triable issue of material fact for purposes of Oakshade's summary judgment motion, Hinesley relies heavily on the California Supreme Court's discussion in *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951 [64 Cal.Rptr.2d 843, 938 P.2d 903] (*Engalla*), of the interrelationship of materiality and reliance in a claim of fraud in the inducement. In particular, Hinesley points to the Supreme Court's statement that materiality is generally a question of fact.[4]

■ The Supreme Court stated in *Engalla, supra,* 15 Cal.4th at pages 976–977: "Actual reliance occurs when a misrepresentation is ' "an immediate cause of [a plaintiff's] conduct, which alters his legal relations," ' and when, absent such representation, ' "he would not, in all reasonable probability, have entered into the contract or other transaction." ' [Citations.] 'It is not . . . necessary that [a plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct. . . . It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision.' [Citation.] [¶] Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material. [Citations.] A misrepresentation is judged to be 'material' if 'a reasonable [person] would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question' [citation], and

---

[4] In *Stevenson v. Baum* (1998) 65 Cal.App.4th 159 [75 Cal.Rptr.2d 904] (*Stevenson*), this court stated that where fraudulent concealment is alleged, materiality is a question of law, quoting *Reed v. King* (1983) 145 Cal.App.3d 261, 265 [193 Cal.Rptr. 130]. (*Stevenson, supra,* at p. 165.) Oakshade cited *Stevenson* for this proposition in its motion for summary judgment and Hinesley on appeal claims *Stevenson* is contrary to the Supreme Court holding in *Engalla, supra,* 15 Cal.4th 951, unless it is read as a case where the specific facts allowed only one inference to be drawn from the evidence, making the issue one of law. We need not be drawn into this debate. As we shall explain, even considering the issue of materiality to be a question of fact, as a matter of law Oakshade rebutted Hinesley's claim of materiality in this case by showing no reasonable reliance.

as such materiality is generally a question of fact unless the 'fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable [person] would have been influenced by it.' [Citation.]" (*Ibid.*)

The Supreme Court went on to explain that in the summary-judgment-like proceeding before it, the party asserting fraud "need only make a showing that the misrepresentations were material, and that therefore a reasonable trier of fact could infer reliance from such misrepresentations, in order to survive [a summary judgment motion], absent evidence conclusively rebutting reliance. [Citation.]" (*Id.* at p. 977.)

Applying the Supreme Court's standard for determining materiality, that is, whether " 'a reasonable [person] would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question[,]' " (*Engalla, supra,* 15 Cal.4th at p. 977) we find it easy to conclude a reasonable person considering entering into a commercial lease for space in a shopping center would attach importance to what other stores or businesses were going to be located in such center. Close proximity of the prospective lease space to internationally, nationally, or regionally recognized "name brand" stores, restaurants, or other businesses would make the space appreciably more attractive. An affirmative misrepresentation or concealment of facts regarding such name brand cotenants would be "material," and "a reasonable trier of fact could infer reliance from such misrepresentations, . . . absent evidence conclusively rebutting reliance." (*Engalla, supra,* 15 Cal.4th at p. 977.)

We conclude, however, Oakshade presented such rebuttal evidence regarding Hinesley's justifiable reliance on any misrepresentations or concealment about his cotenants in this case.

*The Absence of Evidence of Justifiable Reliance*

Paragraph 25.33 of the lease expressly provides: "Lessor reserves the right to effect such other tenancies in the Shopping Center as Lessor in the exercise of its judgment shall determine to bet [*sic*] promote the interest of the Shopping Center. *Lessee does not rely on the fact nor does Lessor represent that any specific Lessee of* [*sic*]*type or number of Lessees shall during the term of this Lease occupy any space in the Shopping Center.*" (Italics added.)

Hinesley contends this lease provision may not be used by Oakshade as a ploy to evade liability. (*Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Development Corp.* (1995) 32 Cal.App.4th 985, 994 [38 Cal.Rptr.2d 783] (*Greenspan*); *Danzig v. Jack Grynberg & Assocs.* (1984) 161 Cal.App.3d 1128, 1138 [208 Cal.Rptr. 336]; 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 304, p. 350.) We agree with this general

proposition. A party may claim fraud in the inducement of a contract containing a provision disclaiming any fraudulent misrepresentations and introduce parol evidence to show such fraud. (*Greenspan, supra,* at pp. 992–995 [discussing cases holding a contract provision stating all representations are contained therein does not bar action for fraud]; *id.* at p. 985 [discussing cases allowing parol evidence to prove fraud]; *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 42 [61 Cal.Rptr.2d 518] [parol evidence admissible on issue of fraud in the inducement].) Fraud in the inducement renders the entire contract voidable, including any provision in the contract providing the written contract is, for example, the sole agreement of the parties, that it contains their entire agreement and that there are no oral representations (integration/no oral representations clause). (*Vai v. Bank of America Nat'l Trust & Sav. Assoc.* (1961) 56 Cal.2d 329, 344 [15 Cal.Rptr. 71, 364 P.2d 247]; 1 Witkin, Summary of Cal. Law, *supra,* Contracts, § 304, p. 350.) As the court in *Greenspan* held, a per se rule that an integration/no oral representations clause establishes, as a matter of law, that a party claiming fraud did not reasonably rely on representations not contained in the contract is inconsistent with California law. (*Greenspan, supra,* at pp. 987, 996.)

However, the rule that this kind of contract provision does not, as a matter of law, preclude a finding of fraud does not mean the contract provision is in every case irrelevant. We find helpful the analysis that has been applied to consideration of the effect of an "as is" clause.

In *Lingsch v. Savage* (1963) 213 Cal.App.2d 729 [29 Cal.Rptr. 201] (*Lingsch*), the court stated, "[u]nder particular circumstances, the use of an 'as is' provision seems to convey the implication that the property is in some way defective and that the buyer must take it at his own risk. [Citations.] . . . We are of the opinion that, generally speaking, such a provision means that the buyer takes the property in the condition visible to or observable by him." (*Id.* at p. 742.) The "as is" clause would be effective as to such observable conditions, but ineffective as to conditions that were not. (*Ibid.*)

For example, in *Driver v. Melone* (1970) 11 Cal.App.3d 746 [90 Cal.Rptr. 98] (*Driver*), plaintiff purchased "as is" a parcel of land improved with an old and dilapidated house. A few months after his purchase the county fire department posted the house as dangerous and declared it condemned because of defective electric wiring. Plaintiff filed an action for rescission and damages, claiming the sellers misrepresented the conditions of the premises and concealed their knowledge that the property was to be condemned. The trial court denied plaintiff's claim and the reviewing court affirmed. The reviewing court stated plaintiff's claim that he would not have purchased the property if he had known of the problem with the building department was

not consistent with his actions. (*Id.* at p. 751.) Plaintiff was an engineer and an experienced dealer in real estate, the defects in the house were glaringly obvious, plaintiff did not ask the sellers about any repairs that were necessary to bring the building up to code, plaintiff did not follow up on an inquiry he made to inspect county records, and he only asked about pending condemnation proceedings after execution of the agreement for sale.

The court in *Driver* also noted that in addition to the obvious condition of the property, plaintiff was put on some notice of defects by the wording of the agreement, which specified he was purchasing the property "as is." While such clause alone did not itself protect the sellers or absolve them from liability, "it is a factor to be considered with all other circumstances in determining whether the buyer has been misled." (*Driver, supra,* 11 Cal.App.3d at p. 752.)

Like an "as is" clause, paragraph 25.33 was not merely a generic integration/no oral representations clause. The language specifically stated, "Lessee *does not rely on* the fact nor does Lessor represent that *any specific Lessee* of [*sic*] type or number of Lessees shall during the term of this Lease *occupy any space in the Shopping Center*." (Italics added.) Oakshade could not contractually insulate itself from its own fraud by this language, but such express language should have conveyed the implication (*Lingsch, supra,* 213 Cal.App.2d at p. 742) that the lease did not come with a guarantee that any particular businesses would be or stay cotenants with Hinesley. The clause should have put Hinesley on notice to ask further questions. The clause is certainly a factor (*Driver, supra,* 11 Cal.App.3d at p. 752) to consider in determining whether Hinesley justifiably relied on Petrovich's representations regarding the particular tenants locating close to the suite Hinesley was considering leasing.

Hinesley admitted he read the entire lease, including paragraph 25.33. If the represented tenancies of Dos Coyotes, Starbucks, and Baskin-Robbins were in fact at all significant to his decision to enter into a lease at Oakshade, paragraph 25.33 should have waved a red flag, or at least a yellow flag, in front of him. Hinesley, however, did not even remember stopping at paragraph 25.33 and spending any time reviewing it to a point where he could recall looking at that particular paragraph. When Hinesley asked his attorney to take a look at the lease for "obvious improprieties," Hinesley did not mention any of the representations made by Petrovich regarding other tenants as part of the context for the attorney's review. Hinesley later proposed a significant number of modifications to the lease offered by Oakshade, apparently based both on his attorney's input, and his own evaluation of the lease. These modification proposals included correction of a typographical error, changes to rental calculations, notice provisions, terms regarding sublessees,

and the addition of an exclusion for gross negligence or willful misconduct to a paragraph otherwise limiting Oakshade's liability. These modifications suggest Hinesley read all the lease paragraphs closely, contemplated the conditions of the lease, and desired and effectuated particular changes to the lease. It can reasonably be inferred based on these actions Hinesley possessed not only an attention to detail but also a certain amount of experience in commercial business. Yet it is undisputed Hinesley never requested revision to paragraph 25.33 despite its obvious connection to the representations he later claimed were so important to him.

Hinesley admits he did not question Petrovich regarding his representations. Hinesley never asked if the other three cotenants had signed leases, did not discuss with Petrovich the potential benefits, such as traffic volume or spending patterns, of such tenants, never told Petrovich that he was signing this lease based on those three tenants coming, and never said the start date of his lease should be tied to the arrival of those three tenants. Contrary to Hinesley's claim that he had no reason to doubt Petrovich's assertions or gestures or to query him further, paragraph 25.33 itself should have alerted him to such need for clarification.

█ We do not suggest Hinesley had an independent obligation to question Petrovich or to tell him that the status of the other tenants' leases was important to his decision and the timing of his own lease. (See *Reed v. King*, *supra*, 145 Cal.App.3d at p. 265 [seller of real property has a duty to disclose where seller knows facts materially affecting value or desirability of the property which are known or accessible only to him and seller knows facts are not known or within reach of diligent attention and observation of buyer].) However, in this business transaction, Hinesley's failure to make such inquiries, discuss such factors or express his intentions when those issues would have been natural and reasonable in the situation is persuasive evidence of Hinesley's state of mind. It is evidence he was not in fact relying on the presence of these tenants in deciding to execute this commercial lease. In the complete absence of any actions taken to question, clarify, or confirm the contractual status of the three cotenants, to notify his attorney of the representations or to modify paragraph 25.33, Hinesley could not justifiably rely on his understanding of the representations and gestures made by Petrovich.

Hinesley's deposition testimony that Petrovich's representations were very important to him and that he relied on those representations in making his decision to locate his store at this shopping center and timing his lease as he did is contradicted by his behavior and his actions on the lease at the time. Moreover, we conclude Oakshade successfully showed Hinesley could not have justifiably relied on any such representations under the circumstances.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent. (Cal. Rules of Court, rule 27(a).)

Blease, Acting P. J., and Nicholson, J., concurred.