Filed 4/29/14  Zaheri v. Estes Automotive Group CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MATHEW ZAHERI, Plaintiff and Respondent, v. ESTES AUTOMOTIVE GROUP II, Inc., et al., Defendants and Appellants. | A137974 (Alameda County Super. Ct. No. HG07360209) |

Appellant Jim Estes negotiated a lease agreement with Mathew Zaheri for property to operate a Hyundai automobile dealership.  Estes formed a corporation, Estes Automotive Group II, Inc. (EAGII), to run the business.  Despite Zaheri's insistence that Estes be individually liable for the lease obligations, Estes signed the lease only as president of EAGII.  The business proved unsuccessful, and EAGII stopped paying rent and surrendered the premises.  Zaheri sued both Estes and EAGII for breach of contract.  The trial court found that Estes had not signed the lease in his personal capacity, but found Estes liable for fraudulent inducement of contract.  Estes challenges the individual judgment against him.  We affirm.

## I.  BACKGROUND

Because Estes does not challenge the trial court's factual findings, we rely on the court's statement of decision and referenced trial exhibits to explain the background of

1

this appeal.[1]  "On July 26, 2006, EAGII, by and through Estes, agreed to lease the Premises from Zaheri" for operation of a Hyundai automobile dealership (Lease).  EAGII was incorporated on June 29, 2006, with Estes as its only officer or director.  The first paragraph of the Lease states (with the italicized language added to a preprinted form): "Parties:  This Lease ('Lease'), dated for reference purposes only *July 24, 2006* is made by and between *Mathew Zaheri* ('Lessor') and *Jim Estes, individually, and* [*EAGII*]*, a California corporation* ('Lessee'), (collectively the 'Parties,' or individually a 'Party')." On the final page of the Lease, the signature block for the "Lessee" (identified as "Jim Estes, an individual, and [EAGII]") included separate signature lines for Estes as president of EAGII and for Estes as an individual (in that order).  Estes signed only the uppermost line as president of EAGII.[2]

"Zaheri delivered the Premises as promised.  EAGII operated the Hyundai dealership for several months, paying the full rent amount from August 2006 to January 2007.  However, . . . [¶] . . . EAGII very quickly ran into significant cash flow

---

[1] We omit the court's citations to the trial evidence.

[2] The signature block for the "Lessee" appeared as follows:
"Executed at: _____
"On: _____
"By LESSEE:
"*Jim Estes, an individual, and*
"*Estes Automotive Group II, Inc.*
"By: _____
"Name Printed:  *Jim Estes*
"Title: *President*
"By: _____
"Name Printed: *Jim Estes, Individually*
"Title: _____
"Address: _____
"
 _____
"Telephone: (___)_____
"Facsimile: (___)_____
"Federal ID No. _____"
Estes signed the first "By:" line but not the second.  None of the other blanks was filled in.

2

problems. In a January 25, 2007 letter to Lorraine Bonneau, a manager at Hyundai Motor America, Estes wrote that EAGII had 'been struggling in this store and [had] been unable to turn a profit since [they] opened in August of 2006.' Estes tried to broker a deal whereby Zaheri would let EAGII out of the lease and would take over the Hyundai dealership. Zaheri declined. [¶] On February 15, 2007, Estes wrote a letter to Zaheri stating that EAGII had 'made a determination to surrender the premises as of February 15th, 2007. [EAGII] had made every effort to cause the Dealership to be successful. However, the losses that [EAGII had] experienced [had] made it impossible to continue business operations.' EAGII paid $8,750 in rent—half of the amount due for the month of February—and returned its keys to the Premises."

Zaheri sued EAGII and Estes. Zaheri's first amended complaint (the operative complaint) asserted breach of lease claims against EAGII and Estes and a claim for fraudulent inducement of contract against Estes. Estes moved for summary adjudication of the breach of lease claim against him as an individual, arguing he never signed the lease in his individual capacity. The trial court granted the motion: "The undisputed evidence shows that the contract at issue by its own terms is not capable of being performed within one year of execution and requires a written confirmation by the party being charged for it to be enforceable. Furthermore, the undisputed evidence shows that Defendant Jim Estes signed the lease agreement only in his capacity as president of [EAGII] and not in his individual capacity. [Citations.]" The court, however, denied summary adjudication of the fraudulent inducement claim against Estes.

The court held a bench trial of the breach of lease claim against EAGII and the fraudulent inducement claim against Estes. The Court found EAGII breached the lease and was liable for more than $925,000 in damages plus interest. Although EAGII was party to the notice of appeal, no issues have been raised as to the judgment against it. It also appears to be undisputed that EAGII has no assets to satisfy the judgment. The only issue presented on appeal is whether Estes was properly held individually liable.

The court concluded Estes was liable for fraudulent inducement based on specific findings that "(1) Estes represented to Zaheri that he would be personally liable on the

3

lease; (2) that the representation was one of material fact; (3) that Estes intended to induce Zaheri's reliance; (4) that Zaheri reasonably relied on the representation, and (5) that Zaheri was damaged as a result." The court provided a detailed review of the evidence to support these findings.

"[T]hrough both words and actions, Estes represented to Zaheri that he would be personally liable on the lease. Estes verbally made representations to Zaheri that he would remain personally liable on the lease as an incentive for [Zaheri] to enter into the lease with EAGII and to remove the security deposit. Estes further negotiated that the $150,000 minimum amount in improvements be changed to a maximum amount in improvements. In addition, Estes had requested that Zaheri designate which sections of the original AIR Commercial Lease Form were modified. [Zaheri] agreed to enter into the lease with EAGII and to forego the security deposit of $35,000 due to EAGII's cash flow considerations. He also added a paragraph to the addendum designating any sections of the original AIR Commercial Lease Form that were modified with the understanding that Estes was individually liable on the lease as represented by Estes. Estes never requested that his individual name be removed from the lease. Indeed, Zaheri expressed to Estes that under no circumstances would he lease out the Premises solely to the corporate entity.

"These facts are also evident from the changes between the initial, interim, and final lease. It is clear from the various drafts that Zaheri was willing to enter into the lease only if Estes was liable in his individual capacity. Estes'[s] initial draft of the lease did not include him in his individual capacity. Yet, the interim draft and the final lease clearly refer to Estes in his individual capacity. Estes made these representations well in advance of signing of the Lease. Estes'[s] testimony that he did not know what the words 'in his individual capacity,' or as 'collective lessee' meant is not credible. . . . Estes was [an] experience[d] business man and had ample opportunity to seek counsel. Significantly, Estes testified that 'he was concerned' about those terms. Nevertheless, Estes testified that at no time prior to signing the lease did he ask Zaheri to remove Estes'[s] name from the lease. Estes knew that his name appeared on the lease in his

4

individual capacity and that Zaheri was entering the lease in reliance on Estes being on the lease in his individual capacity. Estes thereafter initialed and signed the lease and Addendum.

"The evidence shows that Estes was under considerable time pressure to work out a deal on the lease with Zaheri. Had the parties not reached an agreement by July 26, 2006, California Vehicle Code [section] 3062 would have been triggered, under which existing Hyundai dealers within a certain radius of the Premises would have had the right to protest the grant of a new dealership to EAGII. The testimony of both parties indicates that Estes wanted to avoid the trigger of Vehicle Code [section] 3026 at all costs. Most persuasive is the letter that Estes sent to Lorraine Bonneau, the Hyundai Motor America manager, on January 25, 2007. In it, Estes wrote: 'My biggest concern at this point is that I signed a personal guarantee for the lease of this store. While I would not normally sign a personal guarantee for a lease, we were faced with time constraints in order to get the store open in order to assist Hyundai avoid protests from the neighboring dealer . . . . The lease was signed on the last possible day and we were faced with the decision to either sign the lease or not reopen the point within the allotted time. If Hyundai does not remain in this facility there [would] most likely be personal ramifications for me . . . .' The letter indicates that Estes was concerned about not getting the dealership opened on time and he was explicitly acknowledging/admitting that he was, in fact, personally liable on the lease.

"The representation was one of material fact in that Zaheri testified that he would not have entered into the lease agreement absent Estes'[s] representation of personal liability. EAGII was a newly formed corporation in a difficult sales environment. Zaheri's draft lease dated July 15, 2006, included Estes as a tenant in his individual capacity. Zaheri made it clear that without the individual liability of Estes, the Premises was not available.

"The Court finds that Estes knowingly made the misrepresentation. He has had some education both in business and business law and has run several other car dealerships, in addition to the dealership at issue in this case. He has entered into

5

numerous other commercial leases both as landlord and tenant. He testified that, when he is acting as a landlord, he often obtains personal guarantees from his tenants, as well as their signatures in their representative capacity. He was experienced in this particular type of transaction and knew what signing the lease in his individual capacity meant.

"Estes admits that he arrived at [Zaheri's] office in Daly City, on or about July 26, 2006, with two copies of the lease agreement he already signed. Estes had signed his copy of the Lease in Hayward, CA prior to meeting with [Zaheri]. Neither [Zaheri's] attorney nor Estes'[s] attorney was present at that meeting between Estes and [Zaheri]. Zaheri requested that the lease be dated July 24, [2006] as was listed on the lease agreement. Thereafter, Estes proceeded to scratch out the original date of the signed lease and marked the date of lease as '7/24/06' on the copies Estes[] had signed before going to see Zaheri. The final lease and addendum repeatedly identify both [Estes and EAGII] as the collective lessees on the lease. The first page of the agreement, which is initialed by Estes, clearly lists the tenants of the property as 'Jim Estes, *individually*, and [EAGII], a California corporation.' Similarly, the first page of the addendum, which is also initialed by Estes, recognizes 'Jim Estes, an *individual*, and [EAGII],' as being bound to its terms. Additionally, the signature page of the lease refers to the [Estes and EAGII] collectively and says 'Jim Estes, an *individual*, and [EAGII]' just above the signature line. Estes'[s] signature, while not being located exactly on his signature line, nevertheless, appears on the signature block where both Estes and EAGII's signature lines are located. Zaheri testified that he believed Estes'[s] single signature was sufficient to bind both Jim Estes and EAGII because the signature was directly below the term 'Jim Estes, an individual, and [EAGII].'

"The Court also finds that Estes intended to induce Zaheri's reliance on the representation. Zaheri testified that he told Estes that if Estes was not willing to be personally liable on the lease, he would not lease the Premises to him. Given the time pressure that Estes faced, it is clear that Estes intended to overcome Zaheri's objections by telling Zaheri what Zaheri wanted to hear.

"The Court finds Zaheri's reliance on Estes'[s] statements to be reasonable. Zaheri knew that Estes had only a limited amount of time to reach an agreement and had no reason to doubt Estes['s] statements and actions which were intended to induce Zaheri to enter into the lease and to do so before July 26. Zaheri believed that Estes signed both in his individual capacity and as a representative of EAGII. In reliance on Estes'[s] representation, Zaheri entered into the lease with EAGII. Zaheri allowed [Estes and EAGII] early access to the Premises to begin operations. Thereafter, Hayward Hyundai commenced business on the Premises. If Estes had not misrepresented himself as being a tenant, Zaheri would not have leased the Premises to EAGII and a crucial window of opportunity to lease the premises before the real estate collapse would not have closed. Accordingly, Estes's misrepresentations were a direct cause of Zaheri's damages that he incurred as a result of the breach by EAGII, which is in the amount equal to the unpaid rent suffered by Zaheri as a result of breach by EAGII. If EAGII proves unable to satisfy the judgment against it, Zaheri may obtain personal satisfaction from Estes."

The trial court entered judgment against Estes and EAGII for $1,250,030.30 in rent and property taxes due under the lease plus interest, $99,625 in late fees due under the lease, and $12,024.83 in costs.

## II.    DISCUSSION

Estes raises two legal challenges to the trial court's ruling. First, he argues the court erred as a matter of law in finding justifiable reliance. He insists that Zaheri's mistake of law regarding the effect of Estes's signature on the Lease cannot justify reliance. Second, he argues that a fraudulent inducement of contract claim can arise only if the plaintiff was induced to enter into a contract with the person who committed the fraud. We reject both arguments and affirm the judgment.

A.    *Justifiable Reliance*

Estes focuses on the trial court's statement that "Zaheri believed that Estes signed both in his individual capacity and as a representative of EAGII," and argues the court erred as a matter of law in finding justifiable reliance based on Zaheri's mistake of law

7

about the effect of Estes's signature on the Lease. Estes's argument rests on a distortion of the factual record and is unpersuasive.

"The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure); (b) scienter or knowledge of its falsity; (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting damage. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638; [citation].) Fraud in the inducement is a subset of the tort of fraud. It 'occurs when " 'the promisor knows what he is signing but his consent is induced by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud, is voidable.' " ' (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 415 . . . .)" (*Hinesley v. Oakshade Town Center* (2005) 135 Cal.App.4th 289, 294–295, parallel citations omitted (*Hinesley*).)

As explained in *McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, "[s]ection 1668 of the Civil Code provides that '[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, . . . whether willful or negligent, are against the policy of the law.' This provision encompasses intentional and negligent misrepresentation. [Citation.] Accordingly, . . . 'A party to a contract who has been guilty of fraud in its inducement cannot absolve himself or herself from the effects of his or her fraud by any stipulation in the contract, either that no representations have been made, or that any right that might be grounded upon them is waived. Such a stipulation or waiver will be ignored, and parol evidence of misrepresentations will be admitted, for the reason that fraud renders the whole agreement voidable, *including the waiver provision.*' [Citation.]

"Under these principles, California courts have concluded that a variety of contract terms neither bar fraud claims nor establish as a matter of law that reliance upon the defendant's misrepresentations was unjustifiable. [Citation.] For example, in *Hinesley*, the plaintiff asserted a fraud claim against his landlord, alleging that when he leased commercial space in a shopping center, the landlord's agent told him that other units in the shopping center would be occupied by businesses likely to attract heavy 'foot traffic.' ([*Hinesley, supra,* 135 Cal.App.4th] at p. 292.) The lease in question contained a

8

provision that expressly accorded the landlord the exclusive right to select other tenants, and recited that the plaintiff had not relied on any representation regarding other tenants. (*Id*. at p. 297.)  After the landlord obtained summary judgment on the plaintiff's claims, the court in *Hinesley* determined that the lease provision could not by itself absolve the landlord of liability for fraud.  (*Id*. at pp. 300–302.)  In addition, the court reasoned that the provision did not, as a matter of law, preclude a finding of justifiable reliance, and that its presence in the lease was merely a factor to be considered in the determination of justifiable reliance.  (*Id*. at pp. 301–302.) . . . .

". . . Accordingly, [a lease provision asserting] that 'any statement of size' in the lease or used to calculate rent 'is an approximation which the Parties agree is reasonable and any payments based thereon are not subject to revision whether or not the actual size is more or less' [¶] . . . does not insulate [defendant lessor] from liability for fraud or establish that [plaintiff lessee's] reliance on [the lessor's agent's] alleged misrepresentations [about the size of the leased premises] was unjustifiable as a matter of law." (*McClain v. Octagon Plaza, LLC, supra,* 159 Cal.App.4th at pp. 794–795.)

Estes argues that his failure to sign the Lease on the signature line for "Jim Estes, Individually" rendered Zaheri's reliance on Estes's statement that he would be individually responsible for the Lease obligations unjustifiable.  But, the terms of the Lease are just one factor to consider in determining whether Zaheri justifiably relied on Estes's misrepresentation. (*Hinesley, supra,* 135 Cal.App.4th at p. 302.)  Justifiable reliance is a question of fact.  (*Blankenheim v. E. F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1475.)  " 'What would constitute fraud in a given instance might not be fraudulent when exercised toward another person.  The test of the representation is its actual effect on the particular mind . . . [.]'  [Citation.]" (*Ibid*.)  Justifiable reliance may be found " '[i]f the conduct of the plaintiff in the light of his own intelligence and information was [not] *manifestly unreasonable* . . . . [Citations.]' " (*Id.* at p. 1474, some italics omitted & quoting *Seeger v. Odell* (1941) 18 Cal.2d 409, 415.)

The trial court cited ample evidence to support its finding that Zaheri justifiably relied on Estes's oral assurances that he would be personally liable under the Lease,

9

despite Estes's failure to sign on the relevant signature line.  It found that Zaheri clearly communicated that he would not enter into the lease unless Estes was personally liable; that Estes orally assured Zaheri that he would be personally liable on the lease; that Estes negotiated valuable concessions in exchange for the promise, which were incorporated into the final version of the lease; that the final version of the lease unambiguously stated that both Estes and EAGII were intended to be lessees liable on the lease; that Estes's failure to sign the lease in his individual capacity took place under circumstances that understandably misled Zaheri—Estes signed the document out of Zaheri's presence and delivered it to Zaheri for his signature under significant time pressure; Estes signed in a signature *block* applicable to both Estes and EAGII and Estes drew no attention to the fact that he intended to alter the negotiated terms of the Lease by failing to execute the Lease individually; and Estes's letter to Bonneau betrayed the fact that even Estes himself believed under the circumstances that he was individually liable under the Lease as signed.  Estes understandably does not argue that the court's finding is not supported by substantial evidence.

Estes argues Zaheri's mistake was one of law, not fact, in concluding that Estes's signature on the Lease made Estes individually liable, and that a misrepresentation of law ordinarily will not support a claim for fraudulent inducement of contract.  (*Seeger v. Odell, supra,* 18 Cal.2d at p. 414; *Haviland v. Southern California Edison Co.* (1916) 172 Cal. 601, 608–609.)  While Estes is correct about the effect of a misrepresentation of law, he is incorrect that Zaheri's fraudulent inducement claim was improperly premised on such a mistake.  Zaheri did not rely on a misrepresentation by Estes that his signature as EAGII president also bound Estes as an individual.  (See *Upton, Assignee, v. Tribilcock* (1875) 91 U.S. 45, 46–48 [alleged misrepresentation that stock was " 'non-assessable' "]; *Haviland v. Southern California Edison Co.*, at pp. 607–609 [alleged misrepresentation that a release was a form that allowed injured worker to remain on the payroll until he was able to return to work]; *Zeh v. Alameda Community Hotel Corp.* (1932) 122 Cal.App. 366, 367–369 [alleged misrepresentation that stock would pay interest, which was barred by law].)  Zaheri's fraudulent inducement claim rested

10

primarily on Estes's repeated oral representations that he would assume personal liability under the Lease. This was a statement of fact, not a legal opinion. The rule that Estes cites is therefore inapposite.

Estes, however, argues that the trial court specifically attributed Zaheri's reliance to his misunderstanding of the law. He cites the court's statement that "Zaheri believed that Estes signed both in his individual capacity and as a representative of EAGII." However, that statement appears in the paragraph outlining the reasons that "[t]he Court finds Zaheri's reliance on Estes'[s] statements to be reasonable." After discussing justifiable reliance, the court reasoned as follows: "Zaheri believed that Estes signed both in his individual capacity and as a representative of EAGII. In reliance on Estes'[s] representation, Zaheri entered into the lease with EAGII. Zaheri allowed [Estes and EAGII] early access to the Premises to begin operations. Thereafter, Hayward Hyundai commenced business on the Premises. If Estes had not misrepresented himself as being a tenant, Zaheri would not have leased the Premises to EAGII and a crucial window of opportunity to lease the premises before the real estate collapse would not have closed. Accordingly, Estes's misrepresentations were a direct cause of Zaheri's damages that he incurred as a result of the breach by EAGII." In context, the statement quoted by Estes related to the court's finding of *actual* reliance by Zaheri and of Estes's *causation* of Zaheri's damages, not the question of justifiable reliance.

B. *Absence of Contract with Estes*

Estes also argues that Zaheri's fraudulent inducement claim against him as an individual must fail because, as the trial court held in its summary adjudication order, no contract was ever formed between Zaheri and Estes as an individual. He argues "fraudulent inducement cause of action is premised upon the formation of a contract *between the parties*" (italics added), but he cites no case law supporting such a rule. Indeed, Zaheri demonstrates in his respondent's brief that case law is to the contrary.

" 'Every person connected with a fraud is liable for the full amount of the damages. Thus, individuals who are parties to the consummation of a fraud are equally responsible with the person with whom a contract induced by the fraud is made.'

11

[Citations.]" (*Joanaco Projects, Inc. v. Nixon & Tierney Constr. Co.* (1967) 248 Cal.App.2d 821, 833 (*Joanaco*).)  In *Joanaco*, defendant corporation bought property from plaintiff corporation, paying one-third of the purchase price in cash and two-thirds by way of a promissory note secured with a deed of trust.  Plaintiff corporation agreed to subordinate its deeds of trust to trust deeds securing construction loans.  Defendant corporation, however, used only about half the construction loan money on construction and then defaulted on those loans.  The lender then foreclosed on the property, leaving plaintiff corporation's trust deeds worthless.  (*Id.* at pp. 822–824.)  Plaintiff sued the defendant corporation and its two sole officers and shareholders for promissory fraud.  The court held the corporation and officer/shareholders were liable even though the contract was with the corporation alone.  "Although plaintiff's contract was consummated only with defendant corporation, the individual defendants Tierney and Nixon were active participants in the [fraudulent] transaction."  (*Id.* at pp. 832–833.)

Estes attempts to distinguish *Joanaco* by noting that in that case the corporation as well as the officer/shareholders was charged with fraud, whereas here only Estes was charged with fraud.  This argument is unavailing.  Nothing in *Joanaco* states or suggests that its rule is contingent on both the corporation and the individual defendants' having been sued for fraud.  Nor would Estes's suggested reading be logical or reasonable.  At the time the Lease was negotiated and executed, EAGII could only have committed fraud by virtue of the actions of its sole executive officer and only shareholder, Estes.  While EAGII may well also have been guilty of fraud, Zaheri was not required to name all possible defendants in the fraudulent inducement and his failure to name EAGII in no way undermined his fraud claim against Estes.

Estes further argues that the available remedies for fraudulent inducement of contract are to rescind the contract, reform the contract, or affirm the contract and sue for fraud damages.  He argues these "are clearly not remedies that could be used against a non-party to the contract such as Estes."  However, this argument is belied by the facts and disposition of *Joanaco*, where the contract was affirmed and the *noncontracting* parties who participated in the fraud were held liable for damages.  (*Joanaco, supra,*

248 Cal.App.2d at pp. 832–833.)  Similarly here, Zaheri affirmed the contract and was awarded contract damages from EAGII as well as equivalent fraud damages against Estes, the noncontracting party who directly participated in the fraud.  We see no inconsistency between Zaheri's legal theories and the judgment imposed on Estes and EAGII.

### III.  DISPOSITION

The judgment is affirmed.  Estes shall bear Zaheri's costs on appeal.


_____
Bruiniers, J.


We concur:


_____
Jones, P. J.


_____
Needham, J.